Aaron R. NICHOLS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A04–1008–CR–589.

Court of Appeals of Indiana.

April 29, 2011.

Rehearing Denied July 14, 2011.

---

James D. Crum, Coots Henke & Wheeler, P.C., Carmel, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Aaron R. Nichols ("Nichols") appeals the trial court's denial of his Motion to Correct Error challenging the trial court's denial of his motion to order the Department of Correction ("the DOC" or "the Department") to amend the Sex Offender Registry to reflect that Nichols was required to register as a sex offender for a ten-year period instead of for the duration of his life.

We affirm.

### Issue

Nichols raises two issues for our review, which we restate as:

I. Whether the trial court erred when it determined that Nichols's offenses were unrelated under the Sex Offenders Registration Act, and therefore that Nichols must register as a sex offender for life; and

II. Whether the DOC exceeded its statutory authority when it determined that Nichols must register for life, contrary to the understanding of the trial court, Nichols, and the State at the time of Nichols's sentencing.

### Facts and Procedural History

Nichols was charged as a juvenile with three counts of Child Molesting and one count of Attempted Child Molesting in Hamilton County ("the Hamilton County Case"), and two counts of Child Molesting in Tipton County ("the Tipton County case"). On April 26, 2007, the trial judge in the Tipton County case recused himself.[1] On May 25, 2007, the Honorable Judith Proffitt of Hamilton County was appointed as special judge over the Tipton County case. On September 12, 2007, exercising jurisdiction over both the Hamilton County and Tipton County cases, the trial court waived juvenile jurisdiction over the cases and ordered that Nichols be tried as an adult on all six counts.

---

1. Stephanie M. Smith, who represented the State in the Hamilton County case, was appointed Special Prosecuting Attorney in the Tipton County case.

On February 4, 2008, Nichols was charged as an adult in the Hamilton County case with three counts of Child Molesting, with one count charged as a Class B felony and two counts charged as Class C felonies, and with one count of Attempted Child Molesting, as a Class B felony.[2] All of these counts named one victim, W.B., and were alleged to have occurred in May 2002. That same day, Nichols was charged as an adult in the Tipton County case with two counts of Child Molesting, with one as a Class B felony and the other a Class C felony. Both counts involved one alleged victim, C.M., and both were alleged to have occurred between August 1, 2003, and November 20, 2003.

On June 26, 2008, Nichols and the State entered into plea agreements whereby Nichols would plead guilty to two counts of Child Molesting, as Class C felonies, in the Hamilton County case, and to one count of Child Molesting, as a Class C felony, in the Tipton County case. The sentence for each offense would be six years, with each sentence suspended to four years of probation. Separate concurrent sentences would be imposed in the Hamilton County case, and the Tipton County case's sentence would run consecutive to the Hamilton County case's sentences, for a total of eight years probation. In exchange for Nichols's guilty pleas, the State agreed to dismiss the two Class B felony charges in Hamilton County and the single remaining Class C felony charge in Tipton County. The agreement also recited each of the statutory requirements for sex offender registration for a ten-year period or for life. Nichols initialed the plea agreement next to each such provision.

On August 21, 2008, the trial court accepted the plea agreement and sentenced Nichols. On September 5, 2008, after a conference call with counsel for both Nichols and the State, the trial court issued an order clarifying the consecutive sentencing. The order also stated that Nichols would be required to register as a sex offender for a period of ten years based upon the parties' and the court's agreed understanding of the application of *Warren v. State*, 769 N.E.2d 170 (Ind.2002).[3]

In January 2009, the Honorable Paul Felix replaced the Honorable Judith Proffitt as judge. On March 5, 2009, the DOC sent a letter to the trial court regarding the ten-year registration period ordered by the court. The DOC stated that the trial court's order appeared to be in error, that Nichols had committed unrelated offenses, and that as a result the DOC had determined that Nichols was required to register as a sex offender for life; the DOC therefore classified Nichols thus in the Sex Offender Registry. On March 11, 2009, the trial court forwarded copies of the DOC's letter to the parties and notified them that it would take no action with regard to the DOC's decision unless one of the parties sought the court's intervention.

In response to the DOC's letter, on April 30, 2010, Nichols filed his Motion for Correction of Sex Offender Registry, pointing to the terms of the plea agreement and sentencing order and requesting that the trial court order the DOC to revise his status on the state's Sex Offender Registry to a ten-year registration period. The DOC filed its response on May 20, 2010. On June 2, 2010, the trial court denied Nichols's motion.

On June 28, 2010, Nichols filed his Motion to Correct Error. On August 6, 2010, after opposition to Nichols' motion by the

2. Ind.Code § 35–42–4–3.

3. *See infra* for discussion of the applicability of *Warren* to the sex offender registration requirements.

DOC, the trial court denied Nichols' Motion to Correct Error.

This appeal followed.

### Discussion and Decision

#### Standard of Review

 We review a trial court's ruling on a motion to correct error for an abuse of discretion. Where the issues presented upon appeal involve matters of law exclusively, however, we review the trial court's decision *de novo. City of Indianapolis v. Hicks,* 932 N.E.2d 227, 230 (Ind.Ct.App. 2010), *trans. denied.*

#### Whether Nichols's Offenses are Unrelated

 Nichols first argues that the trial court abused its discretion when it concluded that his offenses are unrelated and that he must therefore register for life under Indiana's Sex Offender Registration Act ("SORA" or "the Act"). Specifically, Nichols contends that the term "unrelated" goes undefined in the Act and that his offenses do not satisfy the proper construction of the term as used in the statute and interpreted by Indiana courts.

 Our standard is well-settled in matters of statutory interpretation.

> The "primary goal of statutory interpretation is to give effect to the intention of the legislature." *Westbrook v. State,* 770 N.E.2d 868, 871 (Ind.Ct.App.2002). "Words will be given their plain and ordinary meaning unless otherwise indicated by the statute." *Id.* Criminal statutes are to be construed strictly against the State and in favor of the accused. *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005). However, we assume that the language in the statute was used intentionally and every word should be given effect and meaning. *Id.*

*Shepherd v. State,* 924 N.E.2d 1274, 1284 (Ind.Ct.App.2010), *trans. denied.*

Indiana Code section 11–8–8–19 determines whether a sex offender must register for a ten-year period or for life. Generally, a ten-year period applies after release from a penal facility or placement into community transition, community corrections, parole, or probation programs, with certain exceptions. Ind.Code § 11–8–8–19(a). Among the exceptions—and the exception at issue here—is when a sex offender has been "convicted of at least two (2) unrelated offenses." Ind. Code § 11–8–8–19(e). "Unrelated" is not defined in the statute.

Nichols proposes an interpretation of "unrelated" that he derives from cases interpreting the term as it relates to our habitual offender statute. In particular, he directs us to *Warren v. State,* 769 N.E.2d 170 (Ind.2002). *Warren* interprets Indiana Code section 35–50–2–8(a), which prescribes that "the state may seek to have a person sentenced as a habitual offender for any felony by alleging ... that the person has accumulated two (2) prior unrelated felony convictions." In *Warren,* our supreme court stated in a footnote that "[t]o be 'unrelated,' the commission of the second felony must be subsequent to the sentencing of the first, and the sentencing for the second felony must have preceded the commission of the current felony for which the enhanced sentence is being sought." *Warren,* 769 N.E.2d at 171 n. 2 (citing *Toney v. State,* 715 N.E.2d 367, 369 (Ind.1999)). Nichols would have us interpret "unrelated" here in the same way, that is, that registration for life is only required where a second offense was committed after the defendant was sentenced for a first offense.

We decline to adopt Nichols's interpretation of the statute. Subsection 11–8–8–19(e) says "two (2) unrelated offenses" and not "two (2) *prior* unrelated felony *convictions* " as in subsection 35–50–2–8(a) (em-

phasis added). The "two (2) prior ... felony convictions" language is crucial to our supreme court's interpretation of the habitual offender statute, since the language of the habitual offender statute establishes the required sequence of two successive convictions and subsequent third re-offense through its close relationship to a prior version of the law. *See Miller v. State*, 275 Ind. 454, 459, 417 N.E.2d 339 (1981) (interpreting the present statutory language in light of prior statutory language and case law requiring "two separate and distinct imprisonments," *Cooper v. State*, 259 Ind. 107, 112, 284 N.E.2d 799 (1972)). The absence of "prior" and "felony convictions" in SORA makes it clear that the legislature intended for the statute to apply broadly, that is, to multiple sex offenses without regard to their sequence or status of adjudication. Had the legislature intended otherwise, it would have stated otherwise.

Simply put, the meaning of "unrelated" that Nichols urges upon us is far from the "plain and ordinary meaning" of the word. *Shepherd*, 924 N.E.2d at 1284 (quoting *Westbrook v. State*, 770 N.E.2d 868, 871 (Ind.Ct.App.2002)). Relying upon the plain and ordinary understanding of "unrelated" outside the realm of the habitual offender statute, it is clear that "unrelated offenses" applies to offenses independent of one another—not offenses in sequence where the first offense has already resulted in a conviction and sentencing.

Applied to the facts here, we see no error in the trial court's denial of Nichols's motion. Nichols pled guilty to and was convicted of three charged sex offenses against two different victims in two different counties. The Hamilton County offenses were committed upon a different victim and in a different period of time from the Tipton County offense. As the State noted in its brief, the only connection of any sort between the offenses for which Nichols was convicted is the consolidation of the proceedings.

This procedural tie is not a relationship among the Hamilton County and Tipton County offenses themselves. Subsection 11-8-8-19(e) addresses the factual and substantive relationship among offenses, not the procedural aspects of the case presented here. We therefore reject Nichols's interpretation of "unrelated" to require a conviction-and-reoffense sequence, and hold that the trial court did not err on a matter of law when it denied Nichols's Motion to Correct Error.

### *Whether the DOC Improperly "Overruled" the Trial Court*

 Nichols also contends that even if the trial court did not err in its interpretation of the statute, he must only be required to register as a sex offender for ten years because the DOC, not the trial court, imposed the lifetime registration requirement upon him, and this was contrary to the trial court's sentencing order. The State responds by insisting that this issue is not ripe for review.[4] The State also argues that determination of the length of the sex offender registration requirement imposed upon Nichols, like decisions on

---

4. Ripeness "relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record." *Gardner v. State*, 923 N.E.2d 959, 960 (Ind.Ct.App.2009), *trans. denied.* Unlike the appellant in *Gardner*, Nichols is presently required to register as a sex offender, having been placed on probation. Thus, the question of whether he must register for ten years or for life is ripe for this court's review as the registration period bears upon the duration of statutorily prescribed obligations presently imposed upon Nichols as a result of his convictions.

prison placement, is within the discretion of the DOC and courts have no role in such decisions.[5] Indeed, the State insists that the DOC is required by statute to engage in this activity with respect to Nichols because it is required to make this determination with respect to individuals convicted of sex offenses outside of Indiana. Though neither party's argument is correct, we affirm the trial court.

■ The Sex Offender Registration Act requires that the DOC maintain a registry of sex offenders, and requires that offenders register with the Department. Placement on the Registry is mandatory, and the Act affords neither the trial court nor the DOC any discretion in the matter of the registration requirements. *In re G.B.*, 709 N.E.2d 352, 354–55 (Ind.Ct.App. 1999). Plea agreements "have no effect on operation of the Act." *Id.* at 356; *see also Wallace v. State*, 878 N.E.2d 1269, 1275 (Ind.Ct.App.2008) (applying *In re G.B.* to a pre-Act plea agreement), *aff'd in relevant part, vacated in part on other grounds*, 905 N.E.2d 371 (Ind.2009).

Among the information to be included on the Registry is whether the offender is required to register for ten years or for life. I.C. § 11–8–8–8(a)(6). The DOC is required by statute to maintain this information in the Registry. I.C. § 11–8–2–12.4(1), (2) & (5); I.C. § 11–8–2–13. Where, as here, an offender is placed on probation without being committed to the DOC, the probation office is required to provide to the Department the presentencing report, sentencing order, and any other information necessary for the DOC to properly populate and maintain the Registry. I.C. § 11–8–8–9(d). This, as well as the requirement that the DOC perform a similar function for individuals convicted of offenses outside of Indiana, *see* I.C. § 11–8–8–20(c), indicate that the Department makes a determination as to the required registration period and publishes that determination through the Registry.

None of this, however, means that the DOC "overruled" the trial court, nor does it mean that the DOC, rather than the trial court, determines the length of an offender's reporting period. This is so despite the language in the DOC's letter to the trial court indicating that "we have determined that Mr. Nichols ... is required to register for life under IC 11–8–8–19(e)." (App.63.) Whether the reporting period is ten years or for a lifetime is instead a consequence of the operation of the Act itself. Whether an individual has violated a reporting obligation is a matter ultimately determined in a full criminal proceeding after the State charges an offender with failure to register under the Act. *See* I.C. § 11–8–8–17 (establishing the offense of failure to register and setting classes of offense for sentencing purposes). The DOC instead made a determination required by law as to the length of Nichols's reporting period in order to properly track information in the Registry. This period is determined by the statute itself—not by the plea agreement, not by the trial court, and not—contrary to the State's argument in its brief—by the DOC.

The DOC's decision in Nichols's case was a correct application of the reporting requirements to Nichols's conviction for the DOC's administrative purposes—but it is a decision without direct effect upon Nichols's substantive rights. The trial court did not abuse its discretion in denying Nichols's motion to correct error.

---

5. Particularly telling is the State's assertion that "the DOC does in fact have the authority to determine registration requirements." (Appellee's Br. 16.) For the reasons we set forth below, this statement is simply incorrect.

## Conclusion

The trial court did not abuse its discretion when it denied Nichols's motion to correct error seeking the trial court to order the DOC to change its determination of the applicable Sex Offender Registry reporting period. The reporting period is determined by law, not by the trial court or the DOC.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.