**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Aug 07 2013, 5:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**H. SAMUEL ANSELL**
Ansell Law Firm, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARLOS RAMOS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1211-CR-949 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey L. Marchal, Master Commissioner
Cause No. 49G06-1109-FC-63250

**August 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a bench trial, Carlos Ramos ("Ramos") was convicted of Class C felony sexual misconduct with a minor.[1] Ramos now appeals. His argument, restated, is that the trial court should have set aside his conviction and granted a new trial because he did not knowingly and voluntarily waive his fundamental right to a trial by jury.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 4, 2011, Ramos, whose native language is Spanish, met a group of family and friends at a park in Indianapolis, Indiana. His wife, Rosa, was part of the group, along with Rosa's children. Rosa's best friend, Autumn Fugate, was also present, and had brought along her fourteen-year-old daughter, C.G.

When Ramos arrived at the park, he asked if anyone wanted to go for a run, and only C.G. said yes. The two went running together, side by side. During the run, C.G. stopped when some change fell out of her pocket. Ramos picked up the change, but when C.G. held out her hand for it, Ramos put the money in her back pocket instead and "grabbed [her] butt." *Tr.* at 25-26. C.G. looked at Ramos to try to convey to him that she was not comfortable and started jogging again. Ramos caught up to C.G., who, at that point, had a cramp. C.G. stopped running, and Ramos stopped with her. He asked C.G. what was wrong, and when C.G. told him she had a cramp, Ramos asked where it was. C.G. showed him the location of the cramp, which was above her pants line on her right side, and Ramos put his hand there. His hand started out on the outside of C.G.'s clothing, but went inside a little. C.G. pushed his hand away and gave him another look

---

[1] *See* Ind. Code § 35-42-4-9.

2

indicating she wanted him to stop. After this interaction, C.G. started running faster because she was scared. C.G. then suffered another cramp and stopped running. Ramos stopped, and when he found that C.G. again had a cramp, he put his hand in her pants, under her underwear. His hand touched C.G.'s pubic hair near her vagina. C.G. pushed Ramos's hand away and started running toward her mother.

Once back with her mother, C.G. called her father from her mother's phone and asked him to pick her up. She did not want to talk about the incident in front of everyone. After her father picked her up, C.G. texted her mother and told her what happened. Her mother then picked her up and called the police.

The State charged Ramos with Class C felony sexual misconduct with a minor, and a Spanish-language interpreter was appointed for Ramos. Ramos appeared with counsel on February 28, 2012 and, without the assistance of an interpreter, waived his right to a trial by jury. During this hearing, Ramos tendered a signed English-language jury trial waiver to the court. Ramos, his counsel, and the deputy prosecutor had signed the waiver. The court proceeded to question Ramos about the jury trial waiver, and Ramos testified, in English, that he had read the waiver before signing it and that he had no questions about it. The trial court explained to Ramos the rights he was waiving. Ramos testified that he understood those rights and that he preferred to have a bench trial.

Ramos's bench trial was held on June 7, 2012, where Ramos had the assistance of a translator. Multiple times at trial, Ramos did not wait for a translation and, instead, directly answered questions in English. The trial court found Ramos guilty of Class C felony sexual misconduct with a minor. On June 29, 2012, Ramos filed a motion to

3

correct error, in which he alleged that his waiver of jury trial was not knowing and intelligent. At a hearing on the motion, his wife Rosa testified that she teaches English as a Second Language and has extensive experience working with individuals who have various levels of English proficiency. She testified that on a scale of one to five, with one being the least proficient, her husband's proficiency in English is at level one in some areas and below level one in others. She further testified that Ramos had lived in the United States for sixteen years.

On September 26, 2012, the trial court denied the motion to correct error. Ramos now appeals.

## DISCUSSION AND DECISION

Ramos argues that the trial court erred in denying his motion to correct error, in which he challenged the sufficiency of his jury trial waiver. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Nichols v. State*, 947 N.E.2d 1011, 1015 (Ind. Ct. App. 2011). An abuse of discretion exists only where the decision is clearly against the logic and effect of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Where the issues presented upon appeal involve matters of law exclusively, however, we review the trial court's decision de novo. *Nichols*, 947 N.E.2d at 1015 (citing *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*).

The right of an accused to have a trial by jury is guaranteed by the Indiana and United States Constitutions. U.S. Const. amend. VI; Ind. Const. art. I, § 13; *Dixie v. State*, 726 N.E.2d 257, 258 (Ind. 2000). This right is of "fundamental dimension."

4

*Hutchins v. State*, 493 N.E.2d 444, 445 (Ind. 1986). A criminal defendant is presumed not to waive his right unless he affirmatively acts to do so. *Dixie*, 726 N.E.2d at 258 (citing *Poore v. State*, 681 N.E.2d 204, 207 (Ind. 1997)).

For a defendant's waiver to be effective, it must be made in a knowing, intelligent, and voluntary manner, with sufficient awareness of the surrounding circumstances and the consequences. *Doughty v. State*, 470 N.E.2d 69, 70 (Ind. 1984). The record must show that the defendant personally communicated to the court his choice to relinquish the right to a jury trial. *Taylor v. Illinois*, 484 U.S. 400, 417-18 n.24 (1988) (citing *Doughty*, 470 N.E.2d at 70). Put another way, "[t]he defendant must express his personal desire to waive a jury trial and such a personal desire must be apparent from the court's record." *Poore*, 681 N.E.2d at 206. Personal communication may take the form of a colloquy; however, proper written waiver also constitutes personal communication. *Earl v. State*, 450 N.E.2d 49, 50 (Ind. 1983); *see also Dixie*, 726 N.E.2d at 258. We have held that denying a defendant a jury trial, without the defendant's knowing, voluntary, and intelligent waiver of the right, constitutes fundamental error. *Duncan v. State*, 975 N.E.2d 838, 844 (Ind. Ct. App. 2012); *see also Eldridge v. State*, 627 N.E.2d 844, 849 (Ind. Ct. App. 1994).

Here, when Ramos tendered a signed English-language jury trial waiver to the court, he appeared in person and with counsel. Although his native language was Spanish, and a translator had been appointed for him, the hearing was held without the assistance of a translator. The trial court did not merely accept the signed English-language waiver standing alone. Rather, the court engaged Ramos in a line of

questioning about the waiver itself and the character of the rights Ramos would be giving up. Ramos confirmed that he had read the waiver before signing it and that he understood it. Further, Ramos indicated that he had no additional questions at that time. After the court explained that Ramos had a right to a trial by jury and explained what that meant, Ramos indicated that he understood his right, understood that he could give up that right, and preferred to have a bench trial. At trial, although Ramos had the assistance of a translator, on numerous occasions Ramos did not wait for a translation and, instead, directly answered questions in English.

Under these facts, we find that the trial court did not err in accepting Ramos's jury trial waiver. The record establishes that Ramos's waiver was knowing, intelligent, and voluntary, and that Ramos was sufficiently aware of the surrounding circumstances and the consequences. *Doughty*, 470 N.E.2d at 70. The trial court did not find the testimony relating to Ramos's English proficiency compelling, and we will not second-guess that decision on appeal. Ultimately, the evidence presented was sufficient to establish that Ramos understood his right to a trial by jury and preferred to proceed with a bench trial. The trial court did not abuse its discretion when it denied Ramos's motion to correct error.

Affirmed.

VAIDIK, J., and PYLE, J., concur.