Edwin G. BUSS, in his official capacity as Commissioner of the Indiana Department of Correction, Appellant–Respondent,

v.

Michael L. HARRIS, Appellee–Petitioner.

No. 52A02–0911–CV–1088.

Court of Appeals of Indiana.

May 17, 2010.

---

7. Hudson concedes the amount of the fees was reasonable. *See* Brief of Appellant at 11

n. 4.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Michael L. Harris, New Paris, IN, Appellee Pro Se.

**OPINION**

KIRSCH, Judge.

Edwin G. Buss ("Buss"), Commissioner of the Indiana Department of Correction ("the DOC"), appeals from the trial court's order in an action for declaratory and injunctive relief brought by Michael L. Harris ("Harris"), a former inmate at the Miami Correctional Facility in Miami County, Indiana, requiring the DOC to update the sex offender registry to remove the term "SEX PREDATOR" and the statement "Lifetime Notification" from Harris's offender detail and type on the Indiana Sheriffs' Sex and Violent Offender Registry web site, and determining that Harris's reporting obligation should be for ten years following the date of his release from incarceration. Buss raises the following consolidated and restated issue for our review: Whether the trial court erred by finding and concluding that Harris should not be listed on the sex offender registry as a sexually violent predator and that Harris's reporting obligation was limited to ten years following the date of his release from incarceration.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Harris pleaded guilty to child molesting as a Class B felony and was sentenced to ten years executed on April 29, 1999. Harris was released on parole on November 6, 2002, and again on May 13, 2005, but was reincarcerated after each release for parole violations. On December 17, 2007, Harris was released on parole and prior to his release was advised that he would be designated as a sexually violent predator. The notification form Harris received was dated December 19, 2007 and indicated that Harris would have to register for life as a sexually violent predator. The form also included the question "Is the offender a sexually violent predator under IC 35–38–1–8.5[,]" and the box was checked "Yes." *Appellant's App.* at 104. Harris refused to sign the form. Evidently Harris was reincarcerated for additional parole violations and was released on parole on December 1, 2008. Harris again refused

to sign the notification form he received which stated that Harris was a sexually violent predator and had to register for life as such.

Harris filed his complaint for declaratory and injunctive relief on September 19, 2007, and both parties filed motions for summary judgment. After our Supreme Court's decision in *Jensen v. State*, 905 N.E.2d 384 (Ind.2009), which will be discussed more fully below, both parties filed additional summary judgment motions and briefs. The trial court's telephonic summary judgment hearing occurred on July 6, 2009. On July 7, 2009, the trial court entered its order denying the parties' motions for summary judgment.

On August 17, 2009, the trial court conducted a bench trial, and on August 26, 2009, entered its order granting Harris's requests for declaratory and injunctive relief. Buss now appeals.

## DISCUSSION AND DECISION

By way of background, we reproduce here a summary of the evolution of relevant portions of the Indiana Sex Offender Registration Act ("SORA") taken from our Supreme Court's opinion in *Wallace v. State*, 905 N.E.2d 371, 374–77 (Ind.2009).

The Indiana General Assembly adopted its first version of Megan's Law in July 1994. Referred to as "Zachary's Law" the Act required persons convicted of certain sex crimes to register as "sex offender[s]." Act of March 2, 1994, Pub.L. No. 11–1994, § 7 (codified as Indiana Code §§ 5–2–12–1[;] 5–2–12–13) (current version at Indiana Code §§ 11–8–8–1[;]11–8–8–22). The Act contained both registration and notification provisions, i.e., sex offenders were required to take affirmative steps to notify law enforcement authorities of their whereabouts, and that information was then disseminated to the public. In 1994, eight crimes triggered status as a sex offender and the statute applied only to offenders who resided or intended to reside in Indiana. Ind.Code §§ 5–2–12–4, –5 (1994). Registration involved providing limited information to law enforcement agencies where the offender resided and updating that information if the offender moved to a new municipality or county in Indiana. *Id.* at –8. Notification involved the distribution of a paper registry, updated twice per year and sent automatically to a few select agencies. *Id.* at –11. Other entities could receive the registry on request, but the home addresses of the registrants were withheld. *Id.*

B. Subsequent Amendments to the Act

Since its inception in 1994 the Act has been amended several times. What began as a measure to give communities notification necessary to protect children from sex offenders, the Act has expanded in both breadth and scope. We summarize below the amendments most relevant to the case before us.

The number of sex offenses that trigger the registration requirement has increased from eight to twenty-one, and has expanded to include murder, voluntary manslaughter, and under certain circumstances kidnapping and criminal confinement. Ind.Code §§ 11–8–8–5, –7 (Supp.2008). The length of time in which an offender has a duty to register has also increased. Originally the duty to register was prospective only, and terminated when the offender was no longer on probation or discharged from parole. Ind.Code § 5–2–12–13 (1994). But in 1995 the duty to register expanded to ten years after the date the offender was released from prison, placed on parole, or placed on probation, whichever occurred last. Ind.Code § 5–2–12–13 (1995).

Aside from the registration component of the Act, over the years the notification component of the Act also expanded. Under a 1998 amendment, once an offender is discharged from a correctional facility, the facility is required to provide the local law enforcement authorities with, among other things, the offender's fingerprints, photograph, address where the offender is expected to live, complete criminal history, and any information concerning the offender's treatment of mental disorders. Ind.Code § 5–2–12–7 (1998). The 2001 amendment also requires information concerning any address at which the offender spends more than seven days, and the name and address of the offender's employment or school attendance. Ind.Code § 5–2–12–5 (2002) (amended January 1, 2003) (current version at I.C. § 11–8–8–7). A 2008 amendment requires the disclosure of any electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that a sex offender uses or intends to use. Ind.Code § 11–8–8–8 (Supp.2008).

Verification of the disclosed information has also become more expansive. A 1998 amendment to the Act requires local law enforcement to verify the offender's current residence by mailing a form to the offender at least once per year, which the offender must return either by mail or in person. Ind.Code § 5–2–12–8.5 (1998). In 2006, the Act was amended to allow local law enforcement officers to visit personally the offender's address at least once per year. Ind.Code § 11–8–8–13 (2006). Under a 2008 amendment, if the offender uses an electronic mail address, instant messaging username, electronic chat room username, or social networking web site, the offender must sign a consent form authorizing searches of the offender's personal computer or device with Internet capacity at any time and installation of hardware and software to monitor the offender's Internet usage on any personal computer or device with Internet capacity. Ind.Code § 11–8–8–8 (2008).

A 1999 amendment made registry information accessible through the Internet. Ind.Code § 5–2–12–11 (1999). Today, an offender's home address, work address, and links to maps of their locations are also available. Black letters flash "FAILED TO REGISTER" under the photographs of offenders who have failed to register. *Id.* Red letters flash "SEX PREDATOR" under the photographs of offenders whose crimes qualify them as sexually violent predators. *Id.* Also available is a search-by-name feature that allows web surfers in any part of the world to search the entire state of Indiana for people they know or might know. In addition to being available through Indiana's Online Registry, the information is available through the United States Department of Justice. See Dru Sjodin National Sex Offender Public Website, http://www.nsopr.gov (last visited April 23, 2009).

Criminal penalties associated with the duty to register have increased as well. When enacted in 1994, the Act classified failure to register as a Class A misdemeanor, or as a Class D felony if the offender had a prior unrelated offense for failure to register. Ind.Code § 5–2–12–9 (1994). Amendments in 1996 made failure to register a Class D felony, or Class C felony if there was a prior unrelated offense for failure to register. Ind.Code § 5–2–12–9 (1996). In addition, since 1996, at least once per year a sex offender must register in person with local law enforcement and be photographed in each location where the offender is required to register. Ind.

Code § 11–8–8–14 (2006). Failure to do so is punishable as a Class D felony, or a Class C felony if the offender has a prior unrelated conviction for registration violations. Ind.Code § 11–8–8–17 (2006).

A "sexually violent predator" who is absent for more than 72 hours from his principal place of residence or spends time in a county in which he is not otherwise required to register must inform law enforcement of his absence from his principal place of residence. Failure to do so is punishable as a Class A misdemeanor or Class D felony if the person has a prior unrelated offense for failing to comply with requirements imposed. Ind.Code § 11–8–8–18 (2006).

An offender must also at all times keep in his or her possession a valid driver's license or identification card. Ind.Code § 11–8–8–15 (2006). Failure to do so is punishable as a Class A misdemeanor, or Class D felony if the person is a sexually violent predator or has a prior unrelated conviction for failing to comply with requirements imposed. *Id.* And offenders cannot change their names except through marriage. Ind.Code § 11–8–8–16 (2006).

In addition to the registration and notification components of the Act, a 2006 amendment to the criminal code made it an offense for sexually violent predators and certain subcategories of sex and violent offenders (those designated "offenders against children") to live within one thousand feet of a school, youth program center, or public park, or living within one mile of the residence of the victim of the offender's sex offense. Ind.Code § 35–42–4–11 (2006).

(internal footnotes omitted).

■ "Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment, or decree." Ind.Code § 34–14–1–1; *Ingram v. City of Indianapolis,* 759 N.E.2d 1144, 1146 (Ind.Ct.App.2001). Where the parties agree upon the facts, the trial court's order is analyzed strictly as a question of law. *Ingram,* 759 N.E.2d at 1146. We review questions of law *de novo* and owe no deference to a trial court's legal conclusions. *Id.*

■ Buss argues that the trial court erred by holding that the DOC should not classify Harris as a sexually violent predator and that Harris was not required to register for life as a sexually violent predator. Buss also argues that our Supreme Court's decision in *Jensen v. State,* 905 N.E.2d 384 (Ind.2009) is controlling here, and that the trial court erred by failing to apply the *Jensen* holding to the facts of this case. Buss does not challenge the trial court's findings of fact, but challenges the trial court's application of the law to those facts.

In *Jensen,* under the terms of SORA at the time of Jensen's sentencing, he was required to report and register as a sex offender for a period of ten years. 905 N.E.2d at 389. After his release from prison and probation, Jensen annually reported and registered as a sex offender. *Id.* During the ten-year reporting period, the local sex offender registration coordinator contacted Jensen and informed him that, due to an amendment of SORA, Jensen would have to register for life as a sexually violent predator. *Id.* Jensen filed a motion with the trial court to determine his registration status. *Id.* The trial court found Jensen to be a sexually violent predator who must register for life. *Id.*

Jensen appealed the trial court's decision, and a panel of this court found that the application of the amendment to SORA violated state ex post facto considerations

as applied to Jensen. *Jensen v. State,* 878 N.E.2d 400, 403 (Ind.Ct.App.2007), *trans. granted.* On transfer, our Supreme Court, using the intents-effects test, determined that the amendment to SORA as applied to Jensen was not punitive in nature, and thus did not run afoul of ex post facto considerations. 905 N.E.2d at 394.

As previously stated, Buss asserts that the Supreme Court's holding in *Jensen* is dispositive of Harris's situation and that the trial court erred by failing to so find. Harris, who has proceeded *pro se* throughout this matter, did advance the argument in his complaint that he sought a judicial interpretation of whether the amendments to SORA as applied to him violated state ex post facto considerations. However, Harris also sought a judicial determination of whether the DOC could make the "sexually violent predator" designation where the trial court at sentencing did not make that determination and Indiana Code section 35–38–1–7.5 does not authorize the DOC to make that determination. The trial court's order decided the issue by interpreting Indiana Code section 35–38–1–7.5 and specifically found that the issue presented by Harris is not disposed of by our Supreme Court's holding in *Jensen.* We agree with that approach to the issue.

Harris argues that the DOC is not authorized by statute to make a change in his status or the duration of his reporting requirement. Indiana Code section 35–38–1–7.5 was added by Public Law 56–1998, SEC. 17 and has been amended several times since its effective date of July 1, 1998. As it was initially codified, the statute provided that "[a]t the sentencing hearing, the court shall determine whether the person is a sexually violent predator.

Before making a determination under this section, the court shall consult with a board of experts consisting of two (2) board certified psychologists or psychiatrists who have expertise in criminal behavioral disorders." P.L.56–1998, SEC. 17(c). However, the discretion given to the trial court in subsection (c) in making the sexually violent predator determination at sentencing was effectively removed by the amendments made to the statute by Public Law 216–2007, SEC. 37.[1] New language was added to subsection (b), and changes were made to subsection (d) to read as follows:

(b) ... Except as provided in subsection (g) or (h), a person is a sexually violent predator by operation of law if an offense committed by the person satisfies the conditions set forth in subdivision (1) or (2) and the person was released from incarceration, secure detention, or probation for the offense after June 30, 1994.

\* \* \*

(d) At the sentencing hearing, the court shall indicate on the record whether the person has been convicted of an offense that makes the person a sexually violent predator under subsection (b).

P.L. 216–2007, SEC. 37(b), (d).

We note at the outset that nowhere in Indiana Code section 35–38–1–7.5 is the DOC authorized to make the determination that an offender is a sexually violent predator. Furthermore, the trial court correctly observed that the sentencing court did not indicate on the record at Harris's sentencing hearing that Harris had been convicted of an offense that brought him within the definition of a sex-

---

1. We note that the trial court, at the request of the prosecuting attorney, retains the discretion to determine whether an offender under subsection (a) is a sexually violent predator, and the hearing on the determination may be held in conjunction with the offender's sentencing hearing. Ind.Code § 35–38–1–7.5(e).

ually violent predator under subsection (b). *Appellant's App.* at 10. Harris's judgment of conviction and order of commitment states that Harris's name "be enrolled on the sex offender list." *Id.* at 132. We are left with the question, once an offender's sentencing hearing has concluded, who makes the determination that an offender's status is now, pursuant to amendments to the statute, that of a sexually violent predator subject to lifetime registration requirements?

In *Jones v. State*, 885 N.E.2d 1286 (Ind. 2008), our Supreme Court addressed the issue of a post-sentencing hearing determination of an offender's status initiated by the trial court. On the date of Jones's original sentencing in 2002, the trial court did not find Jones to be a sexually violent predator, and Jones was required to register for a period of ten years after he was placed on probation. 885 N.E.2d at 1288. Jones admitted to several violations of the conditions of his probation, and the trial court held a probation revocation hearing. *Id.* at 1287. The trial court found that Jones had violated the terms of his probation and *sua sponte* initiated proceedings to determine if Jones was a sexually violent predator. *Id.* at 1287–88. The trial court imposed the suspended portion of Jones's original sentence, found that Jones was a sexually violent predator, and ordered him to register for life as such. *Id.* at 1288. At the time of Jones's probation revocation hearing, the statute had been amended to require lifetime registration of offenders who are sexually violent predators. *Id.*

On appeal, our Supreme Court noted that the action taken by a trial court at the conclusion of a probation revocation proceeding was not a "sentencing." *Id.* at 1289. Jones's plea agreement expressly included the acknowledgement that the suspension of his sentence was subject to conditions of probation, and at sentencing, the trial court's conditions included that upon Jones's release to probation that he must register as a sex offender, which at the time was a ten-year period. *Id.* The Supreme Court concluded that the trial court "was not authorized to initiate a[ ] [sexually violent predator] determination during the defendant's probation revocation proceedings." *Id.* Further, the Supreme Court stated that Jones was required to register as a sex offender, and not a sexually violent predator, for ten years following his release from incarceration. *Id.* If the trial court is not authorized to initiate a determination that an offender is a sexually violent predator during a probation revocation hearing, after the sentencing hearing has concluded, then it follows that the Department of Correction cannot make such a determination after the sentencing hearing has concluded.

The State argues that Harris is a sexually violent predator by operation of law and cites to language from *Jones* and *Padgett v. State*, 875 N.E.2d 310 (Ind.Ct.App.2007) in support. In *Jones*, the Supreme Court noted that the substantial amendments to Indiana Code section 35–38–1–7.5 included "the *automatic designation* of [sexually violent predator] status to persons who commit certain designated offenses." 885 N.E.2d at 1289 n. 3. (emphasis added). Yet, in spite of that "automatic designation," which occurred by virtue of the amendment to the statute, the Supreme Court did not hold that Jones's status had changed to that of a sexually violent predator, or that he was required to register for life. *Id.* at 1289.

In *Padgett*, a panel of this court noted that the version of Indiana Code section 35–38–1–7.5 in effect at the time Padgett was sentenced "required the trial court to find him a sexually violent predator *per*

se " for having committed one of the enumerated offenses. 875 N.E.2d at 319 (emphasis added). Although we found that the amendments to the statute, as applied to Padgett, violated ex post facto considerations, we decided the case under contract law and affirmed the trial court. *Id.* Padgett's plea agreement specifically stated that he agreed "to comply with all conditions of the Indiana sex offender registry statutes … *and any successor statutes* and any similar statutes in any other state [in] which the offender resides, as well as all statutory requirements imposed upon sexually violent predators." *Id.* (citing the plea agreement) (emphasis added).

In *Blakemore v. State,* 925 N.E.2d 759 (Ind.Ct.App. 2010), a decision not yet certified, Blakemore pleaded guilty to sexual misconduct with a minor and a condition of his plea agreement provided that Blakemore would "comply with the statutory requirements of registering with local law enforcement as a sex offender." Op. at 760–61. The order of probation Blakemore signed upon his release to probation provided that he maintain his registration as a sex offender throughout probation. *Id.* However, at the time Blakemore was convicted, a person convicted of his offense was not subject to the registration requirements for sex offenders, but a subsequent amendment added that offense to those subject to the registration requirements. *Id.* After Blakemore completed his sentence and had no remaining conditions of probation, he registered on five occasions as a sex offender. *Id.* at 3. However, he was subsequently arrested for and convicted of failing to register as a sex offender. *Id.*

On appeal, Blakemore challenged the constitutionality of his conviction claiming that he could not be convicted for his failure to register as a sex offender when he was not required to so register at the time of his conviction. *Id.* at 5–6. We reversed his conviction and held that the term of his plea agreement to "comply with the statutory requirements in registering" as a sex offender could not be expanded to subject him to "punishment under laws not in existence when he entered into the agreement." *Id.* at 6. Although this opinion, as yet uncertified, has no precedential value, we agree with its analysis and conclusion.

If we were to adopt the State's construction of the statutory provisions, an offender could, in theory, have completed his sentence and reporting requirement, yet without notice to him be in violation of lifetime reporting requirements by operation of law due to subsequent amendments to SORA. Nothing before us indicates that the legislature intended such a result.

The State argues that Buss and the DOC were not making the determination that Harris was a sexually violent predator with a lifelong reporting obligation, but were merely notifying Harris of his status and post-release reporting obligations. The State also notes that Indiana Code section 35–38–1–7.5(f)(2) requires the trial court to send notice to the DOC if a person is a sexually violent predator and uses that language to support its contention that it is not claiming authority to make the status and reporting determinations. Yet, the State does not offer a citation to the record establishing that Buss and the DOC received notification from the trial court indicating a change to Harris's status, thus triggering their duty to notify Harris.

We hold that the trial court did not err by finding and concluding that the DOC and Buss were not authorized by statute to make a determination of and change to Harris's status on the sex offender registry. We also reject the State's argument that Harris's status was changed by operation of law under Indiana Code section 35–

38–1–7.5(b) and note that the Supreme Court's decision in *Jones* supports our conclusion. We also hold that the trial court correctly determined that Harris's reporting obligation was for ten years and not a lifelong reporting obligation, as the change to the duration of Harris's reporting obligation would have occurred only by a finding and conclusion that his status had changed. Again, *Jones* is helpful in reaching that conclusion.

Affirmed.

FRIEDLANDER, J., and ROBB, J., concur.