ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Cara Schaefer Wieneke
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA OFFICE OF THE PUBLIC
DEFENDER
Stephen T. Owens
Public Defender of Indiana

`                    Emily J. Witney
Gregory L. Lewis
Deputy Public Defenders
Indianapolis, Indiana

---

### In the
# Indiana Supreme Court

FILED
Jun 28 2011, 1:02 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 52S02-1011-CV-642

BRUCE LEMMON, IN HIS OFFICIAL CAPACITY
AS COMMISSIONER OF THE INDIANA
DEPARTMENT OF CORRECTION,

*Appellant (Respondent below)*,

v.

MICHAEL L. HARRIS,

*Appellee (Petitioner below)*.

Appeal from the Miami Circuit Court, No. 52C01-0709-MI-644
The Honorable Robert A. Spahr, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 52A02-0911-CV-1088

**Sullivan, Justice.**

A sex offender who committed his crimes before the Legislature created the status of "sexually violent predator" challenges that status being subsequently imposed upon him "by operation of law." We conclude that his status has in fact changed by operation of law and that this change does not violate Indiana's prohibition on ex post facto laws or doctrine of separation of powers.

## Background

In April, 1999, Michael Harris pled guilty in Kosciusko Superior Court to child molesting as a Class B felony. He was sentenced to a prison term of ten years and was required to register on the sex offender list for a period of ten years following his release from incarceration. Harris was released to parole in 2002,[1] 2005, and 2007, but was subsequently reincarcerated each time for parole violations. He was last released on December 1, 2008,[2] and has completed parole.

Either simultaneously with or prior to his releases in 2007 and 2008, the Department of Correction notified Harris that he was required to register as a sexually violent predator ("SVP") with local law enforcement for his lifetime. The notification forms included the question "Is the offender a sexually violent predator under IC 35-38-1-7.5?" and a box that was checked "Yes." Appellant's App. 104-05. The forms also included the question "How long is the offender required to register under IC 11-8-8?" and a box that was checked "Life." Id. Harris refused to sign the forms on both occasions. He acknowledged that he must register with local law enforcement as a sex offender for ten years but disagreed that he was an SVP and required to register for life.

---

[1] Harris first registered as a sex offender after his release from prison in 2002.
[2] Thus, Harris's ten-year reporting obligation commenced on December 1, 2008, with his final release from incarceration.

In September, 2007, while still incarcerated,[3] Harris filed a complaint in the Miami Circuit Court for declaratory judgment and injunctive relief against the Commissioner of the Indiana Department of Correction[4] (referred to collectively with the Department of Correction as "DOC"). Arguing primarily that the DOC lacked the authority to make an SVP determination, he requested a declaration that his reporting obligation was for ten years following his release from incarceration and further requested that the DOC remove the term "sex predator" and statement "lifetime notification" from his offender detail and type on the Indiana Sheriff's Sex and Violent Offender Registry website.[5]

The trial court denied both parties' motions for summary judgment and, following a bench trial, entered a declaratory judgment and injunctive relief for Harris, thereby removing his SVP status.

The Court of Appeals affirmed the trial court. It held that the DOC was not authorized by statute to determine Harris's status as an SVP and that his status did not change by operation of law under Indiana Code section 35-38-1-7.5(b). Buss v. Harris, 926 N.E.2d 1110, 1117-18 (Ind. Ct. App. 2010), reh'g denied. Thus, the Court of Appeals concluded that he was required to report for ten years and not for his lifetime, "as the change to the duration of Harris's reporting obligation would have occurred only by a finding and conclusion that his status had changed." Id. at 1118.

The DOC sought, and we granted, transfer, Buss v. Harris, — N.E.2d — (Ind. 2010) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

---

[3] According to the trial court, Harris chose to file his complaint prior to his release "in order to call attention to his plight triggered by the Indiana General Assembly's repeated amendments of Indiana Code [s]ection 35-38-1-7.5 since [he] was convicted." Appellant's App. 9.

[4] We note that Bruce Lemmon has taken the place of Edwin G. Buss as Commissioner of the Indiana Department of Correction, effective January 17, 2011. IDOC: Biographies, http://www.in.gov/idoc/2347.htm (last visited June 27, 2011). As the successor to Commissioner Buss, Commissioner Lemmon has been automatically substituted as a party pursuant to Indiana Trial Rule 25(F)(1).

[5] It is not clear on what date the website was updated to reflect the fact that Harris was an SVP with a lifetime-registration requirement.

**Discussion**

**I**

The Indiana Sex Offender Registration Act (the "Act") generally requires persons convicted of certain offenses to register with local law enforcement agencies and to disclose detailed personal information. This Court has been required to interpret the Act in several cases in recent years. See Hevner v. State, 919 N.E.2d 109 (Ind. 2010) (considering whether the Act as applied violates Indiana's prohibition on ex post facto laws); State v. Pollard, 908 N.E.2d 1145 (Ind. 2009) (same); Jensen v. State, 905 N.E.2d 384 (Ind. 2009) (plurality opinion) (same); Wallace v. State, 905 N.E.2d 371 (Ind. 2009) (same); Jones v. State, 885 N.E.2d 1286 (Ind. 2008) (considering when the Act requires the trial court to make an SVP determination).

One of the reasons we have had so many cases involving the Act is that it has been amended multiple times since first being enacted in 1994. See Wallace, 905 N.E.2d at 374-77 (outlining the history of the Act and its various amendments); Doe v. O'Connor, 790 N.E.2d 985, 986-87 (Ind. 2003) (same). Here is a brief sketch of the Act's evolution (with the key changes from year-to-year emphasized):

1. The Act as amended through 1997 ("1997 Act"):
   a. A sex "offender" is defined as a person convicted in Indiana after June 30, 1994, of a qualifying offense listed in Indiana Code section 5-2-12-4(1) (Supp. 1997); this list included child molestation. I.C. § 5-2-12-4(1)(C).
   b. A sex "offender" is required to register with local law enforcement agencies and to disclose detailed personal information, I.C. §§ 5-2-12-5, -6, for ten years after the latter of his or her release from prison, placement on parole, or placement on probation, I.C. § 5-2-12-13.

   The 1997 Act was the version of the statute in effect at the time Harris committed his offenses and applied to his sentencing.[6]

---

[6] The conduct for which Harris was convicted occurred between February, 1997, and March, 1998. Appellant's App. 10.

4

2. Underline As amended in 1998 ("1998 Amendment"):

   a. A ***sexually violent predator ("SVP") is defined*** as "an individual who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly engage in any of the offenses described in section 4 of this chapter." Ind. Code § 5-2-12-4.5 (1998); see Pub. L. No. 56-1998, § 7, 1998 Ind. Acts 917, 924 (effective July 1, 1998).

   b. The court is required to ***determine at the sentencing hearing whether a person is an ("SVP")*** after consulting with two board certified psychologists or psychiatrists. I.C. § 35-38-1-7.5(c).

   c. An SVP is required to ***register for an indefinite period*** unless and until a court, assisted by a board of experts, finds that the offender is no longer an SVP. I.C. § 5-2-12-13(b).

3. As amended in 2003 ("2003 Amendment"):

   a. An SVP is required to ***register for life***. Ind. Code § 5-2-12-13(b) (Supp. 2003).

4. As amended in 2006 ("2006 Amendment"):

   a. A person is an ***SVP in one of two ways***:
      i. Subsection (b) – a person is an SVP if he or she, being at least eighteen years of age, ***commits a qualifying offense***, Ind. Code § 35-38-1-7.5(b) (Supp. 2006); this list included child molesting as a Class A or Class B felony. I.C. § 35-38-1-7.5(b)(1)(C).
      ii. Subsection (a) – a person is an SVP if he or she "***suffers from a mental abnormality or personality disorder*** that makes the individual likely to repeatedly engage in any of the offenses described in [Ind. Code section 11-8-8-5]." I.C. § 35-38-1-7.5(a) (emphasis added) (formerly Ind. Code § 5-2-12-4.5).[7]

   b. The court is required to ***determine at the sentencing hearing whether the person is an SVP under subsection (b)***; if the court does not find the person to be an SVP under subsection (b), the court is required to consult with experts to determine if the person is an SVP under subsection (a). I.C. § 35-38-1-7.5(d)-(e).

5. As amended in 2007 ("2007 Amendment"):

   a. Subsection (b) amended – a person is an SVP "***by operation of law*** if an offense committed by the person [is a qualifying offense] and the person was released

---

[7] Indiana Code chapter 5-2-12 was repealed in 2006, when the Legislature moved the statutes governing sex offender registration from Title 5 (State and Local Administration) to Title 11 (Corrections) of the Indiana Code. Pub. L. No. 140-2006, §§ 13, 41, 2006 Ind. Acts 2306, 2316, 2367; Pub. L. No. 173-2006, §§ 13, 55, 2006 Ind. Acts 3620, 3630, 3709. Indiana Code chapter 11-8-8 now contains the various sections dealing with the sex offender registry, and it still requires SVPs to register for life. Ind. Code § 11-8-8-19(b) (2010).

from incarceration, secure detention, or probation for the offense after June 30, 1994."[8]  Ind. Code § 35-38-1-7.5(b) (Supp. 2007) (emphasis added).

b. The court is required at the sentencing hearing to "***indicate on the record*** whether the person has been convicted of an offense that makes the person a sexually violent predator under subsection (b)."  I.C. § 35-38-1-7.5(d) (emphasis added).

c. The court ***no longer "determines" SVP status at the sentencing hearing*** unless a person is not an SVP under subsection (b) and the prosecuting attorney requests a hearing to determine whether the person is an SVP under subsection (a).  I.C. § 35-38-1-7.5(e).  If the court grants the request, it must conduct the hearing and consider the testimony of two experts before determining whether the person is an SVP under subsection (a).  Id.

## II

The enactments outlined above apply to Harris as follows:

1. Because Harris committed his crimes while the 1997 Act was in effect, he was a sex "offender" and was required to register with local law enforcement agencies and to disclose detailed personal information for ten years after release.[9]

2. Harris was not affected by the 1998 Amendment, 2003 Amendment, or 2006 Amendment when they were enacted.

The State takes the position that the 2007 Amendment applies to Harris because he was convicted of one of the qualifying offenses and because he was released from prison after June 30, 1994.  As such, the State maintains, he became an SVP by "operation of law" pursuant to the 2007 Amendment and, as an SVP, is subject to the lifetime-registration requirement for SVPs enacted in the 2003 Amendment.

Harris contends that he is not subject to the 2007 Amendment.  Specifically, he argues that the DOC is not authorized to change his status to SVP where the trial court at sentencing did not make that determination and further argues that his status did not change by operation of law.  Both the trial court and Court of Appeals agreed.  We, however, reach a different conclusion.

---

[8] This provision became effective on May 10, 2007.  Pub. L No. 216-2007, § 37, 2007 Ind. Acts 3281, 3319-20.

[9] It is well-settled that, "[a]s a general rule, a court must sentence a defendant under the statute in effect on the date the defendant committed the offense."  Hevner, 919 N.E.2d at 112 (citation omitted).  The parties in this case do not challenge the applicability of the 1997 Act to Harris's offense.

The Court of Appeals relied heavily on our opinion in Jones v. State, 885 N.E.2d 1286 (Ind. 2008), in concluding that Harris's status did not change by operation of law to SVP. Harris, 926 N.E.2d at 1116-18. But we do not think that Jones supports such a conclusion. The defendant in Jones challenged the SVP determination made at his probation revocation hearing in March, 2007. 885 N.E.2d at 1287-88. He contended that the probation revocation court could not change his status to SVP because the statute required that the court "determine" whether a person was an SVP at the sentencing hearing. Id. at 1288. We agreed that the statute in effect at the time the trial court changed Jones's status[10] required that determination to have been made at the sentencing hearing, and we accordingly granted him relief. Id. at 1288-89. However, we recognized that in the 2007 Amendment, the Legislature had changed the Act to include the "automatic designation of SVP status to persons who commit certain designated offenses." Id. at 1289 n.3.

Harris makes a similar argument to that which succeeded in Jones. His argument, however, fails because under the 2007 Amendment, the Legislature had changed the Act from requiring the court to determine SVP status at the sentencing hearing to the "automatic designation of SVP status." At the time Harris was released from prison in December, 2007, the sentencing court was no longer required to have "determined" a person's SVP status.[11] Instead, the statute in effect at that time provided that a person is an SVP "by operation of law" under Indiana Code section 35-38-1-7.5(b) if he or she committed one of the designated offenses; Indiana Code sec-

---

[10] We actually referenced in the Jones opinion portions of the 2001 statute that had been cited by the trial court and not the 2006 Amendment that was in existence at the time the trial court changed Jones's status. Jones, 885 N.E.2d at 1288-89. The difference was not material for purposes of that case because both versions required that the court "determine" whether the person was an SVP at the sentencing hearing. Ind. Code § 35-38-1-7.5(c) (Supp. 2001); Ind. Code § 35-38-1-7.5(d) (Supp. 2006).

[11] We note that Harris had attended a meeting at the Miami Correctional Facility in February, 2007, where he had learned of the potential applicability of the 2006 Amendment to Indiana Code section 35-38-1-7.5. Appellant's App. 15. Harris apparently filed grievances with the DOC in March, 2007, and April, 2007, challenging the "potential" change of his status to SVP. Id. at 16, 17. Harris filed his complaint with the Miami Circuit Court on September 17, 2007. Id. at 21. It appears Harris was first notified that his status had actually changed sometime in December, 2007, when he received the notification form from the DOC. Id. at 104. Harris was then reincarcerated for parole violations and was last released from prison in December, 2008; he was again notified that he had to register as an SVP. Based on this, it is clear that Harris's status had not officially changed to SVP until well after the effective date of the 2007 Amendment.

tion 35-38-1-7.5(d) only required that the sentencing court "indicate on the record" whether he or she had committed such an offense.[12]  Moreover, unlike the 2006 Amendment, the 2007 Amendment explicitly states that its provisions apply to persons who commit designated offenses and are "released from incarceration, secure detention, or probation for the offense after June 30, 1994."  Ind. Code § 35-38-1-7.5(b) (Supp. 2007).

Based on its plain language, we conclude that Indiana Code section 35-38-1-7.5 applies retroactively to Harris.  Specifically, because Harris was convicted of child molesting as a Class B felony (one of the qualifying offenses) and because he was released from incarceration after June 30, 1994, the statute provides that his status is SVP by operation of law.[13]  Of course, Harris's classification as an SVP by operation of law is only valid if application of the Act does not violate applicable provisions of constitutional law.

### III

Harris contends that his classification as an SVP under the 2007 Amendment with the effect of converting his ten-year registration requirement into a lifetime-registration requirement violates the Ex Post Facto Clause of the Indiana Constitution.[14]  The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed."  Ind. Const. art. I, § 24.  In general,

---

[12] Our conclusion that the 2007 Amendment eliminated any "determination" by the sentencing court for certain offenses is further supported by the change to Indiana Code section 35-38-1-7.5(e).  The 2006 Amendment provided, in relevant part:  "If the court does not find the person to be a sexually violent predator under subsection (b)."  Ind. Code § 35-38-1-7.5(e) (Supp. 2006) (emphasis added).  Compare that language to the 2007 Amendment:  "If a person is not a sexually violent predator under subsection (b)."  Ind. Code § 35-38-1-7.5(e) (Supp. 2007) (emphasis added).

[13] Harris does not fall under the exception contained in Indiana Code section 35-38-1-7.5(h), which provides that a person is not an SVP by operation of law if seven conditions are met.  Harris's charging information indicates that he was over the age of 21 when he was convicted, and the child was under the age of 14.  Appellant's App. 126.  Thus, Harris was more than 4 years older than the victim and does not fall within subsection (h).  See Ind. Code § 35-38-1-7.5(h)(2) (Supp. 2007) (requiring as a condition that the person not be more than four years older than the victim).

[14] Harris seems to argue only a violation of the Ex Post Facto Clause of the Indiana Constitution and not a violation of that provision in the U.S. Constitution.  See Appellant's App. 16 (referencing the provision of the Indiana Constitution in the complaint).  In any event, we have recognized that our Act is similar to one already upheld by the U.S. Supreme Court under the U.S. Constitution, and therefore, using the same analytical framework employed to evaluate ex post facto claims under the federal constitution, we have evaluated previous claims only under the Indiana Constitution.  Hevner, 919 N.E.2d at 111; Jensen, 905 N.E.2d at 390; Wallace, 905 N.E.2d at 377-79.

the Ex Post Facto Clause forbids laws imposing punishment for an act that was not otherwise punishable at the time it was committed or imposing additional punishment for an act then proscribed. Wallace, 905 N.E.2d at 377. "A law is ex post facto if it 'substantially disadvantage[s] [a] defendant because it increase[s] his punishment, change[s] the elements of or ultimate facts necessary to prove the offense, or deprive[s] [a] defendant of some defense or lesser punishment that was available at the time of the crime.'" Stroud v. State, 809 N.E.2d 274, 288 (Ind. 2004) (alteration in original) (quoting Crawford v. State, 669 N.E.2d 141, 150 (Ind. 1996)). Underlying the Ex Post Facto Clause is the desire to give people fair warning of the conduct that will give rise to criminal penalties. Wallace, 905 N.E.2d at 377 (citing Armstrong v. State, 848 N.E.2d 1088, 1093 (Ind. 2006)).

In evaluating ex post facto claims under the Indiana Constitution, we apply the familiar "intent-effects" test adopted in Wallace v. State. Id. at 378 (relying on Smith v. Doe, 538 U.S. 84, 105-06 (2003)). Under this test, we first determine whether the Legislature meant the Act to establish civil proceedings. Id. If instead its intention was to impose punishment, then the inquiry ends. Id. However, if the Legislature intended a nonpunitive regulatory scheme, then we must examine the Act's effects to determine whether they are in fact so punitive as to transform the regulatory scheme into a criminal penalty; if so, then retroactive application of the law violates the Ex Post Facto Clause. Id.

As we recognized in Wallace, id. at 379, and Jensen, 905 N.E.2d at 390, it is difficult to determine any intent here given the lack of legislative history and purpose statement. And, legislative intent cannot clearly be discerned from the location of the statutes within the Code. As noted in Jensen, the statutory provision for determining whether a person is an SVP is located within the criminal code, while the provision for registration and the duration of the registration period is located in the Title dealing with the Department of Correction. 905 N.E.2d at 390. Nevertheless, the party challenging the constitutionality of the statute bears the burden of proof, and in this case, Harris has not cited any evidence of a punitive intent on the part of the Legislature with respect to the 2007 Amendment. See id. at 390-91 (noting that "every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing" (citation omitted)). Thus, we will presume that the Legislature's

9

intent was civil and regulatory in relation to Harris's claim that application of the 2007 Amendment violates the Ex Post Facto Clause.

Having found no punitive intent on the part of the Legislature, our task now is to determine whether the effects of applying the regulatory scheme embodied in the 2007 Amendment are punitive as to Harris. We are guided by seven factors:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment – retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

Wallace, 905 N.E.2d at 379 (alteration in original) (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)). But, before we begin our analysis of these factors, we note that Harris is in a very similar position as Jensen (whose ex post facto claim failed). Jensen, 905 N.E.2d at 394. In both cases, neither men were SVPs initially; it was only by retroactive application of the statutes that they became SVPs. Both brought ex post facto challenges within their original ten-year registration requirement; they had not registered for any additional time beyond their original ten years. Harris differs though in two ways – the conduct leading to his conviction occurred before the SVP designation even existed,[15] and his challenge is to the 2007 Amendment to the Act. Thus, using Jensen as a touchstone, our analysis will focus on whether these two differences in particular make the Act any more or less punitive as applied to Harris.[16]

First, we note that the Act imposes significant affirmative obligations on everyone to whom it applies. Id. at 391. Harris must register and re-register, disclose public and private information, and update that information; he faces the same duties and restraints as Jensen. See id.

---

[15] As mentioned in footnote 6, supra, the conduct for which Harris was convicted occurred between February, 1997, and March, 1998. Appellant's App. 10. The SVP designation became effective on July 1, 1998.

[16] Harris apparently raised the ex post facto issue to the trial court, but because he won at that level on other grounds, he did not delineate his arguments under these factors in his brief to the Court of Appeals. See Appellee's Br. 11-13.

10

at 391 (requiring at-home visitation, valid identification at all times, notification of changes in residence, etc.).  But we note that even at the time Harris committed his offense and at the time of his plea agreement, sex offenders were required to register with local law enforcement, to disclose public and private information, and to provide notification of changes in address.  Ind. Code §§ 5-2-12-5, -6, -8 (Supp. 1997); Ind. Code §§ 5-2-12-5, -6, -8 (1998); see also Ind. Code § 5-2-12-8.5 (1998) (requiring verification of offender's current residence).  Indeed, like Jensen, Harris was subject to these restraints even before his offense qualified him as an SVP.  See Jensen, 905 N.E.2d at 392 ("Nothing mentioned above imposes any greater burden on Jensen or has any greater adverse affect now that he is required to register for a longer period.").  Nevertheless, SVPs are treated differently than other offenders in some ways.  Specifically, they are required to re-register in person with local law enforcement and to be photographed every 90 days instead of annually, Ind. Code § 11-8-8-14 (Supp. 2007); to inform in person local law enforcement authorities of their plans to travel from their principal place of residence for more than 72 hours and also notify in person local law enforcement authorities at their destination, I.C. § 11-8-8-18; and to re-register for life, I.C. § 11-8-8-19.  These additional restraints, in particular the increase to a lifetime-registration requirement, lean in favor of treating the effects of the Act as punitive when applied to Harris.[17]

Although the Act does not expressly impose sanctions that have historically been considered punishment, we have concluded that "'the dissemination provision at least resembles the punishment of shaming.'"  Jensen, 905 N.E.2d at 392 (plurality opinion) (citation omitted).  But again, even at the time Harris committed his offense and at the time of his plea agreement, the sex offender registry was available on computer disk and was provided by paper copy to various entities dealing with children.  Ind. Code § 5-2-12-11 (Supp. 1997); Ind. Code § 5-2-12-11 (1998).  Now, all offenders, not just SVPs, must also submit their photographs, and their information is readily available to anyone who wishes to view it.  Ind. Code § 11-8-8-8 (Supp. 2007); Jensen, 905 N.E.2d at 392. Whether the offender provides the information for ten years or for

_____

[17] Indeed, we are concerned mostly with the lifetime-registration requirement, as it is clear to us that the "lesser new obligations imposed by the [2007 Amendment] are not themselves punishment."  Jensen, 905 N.E.2d at 396 n.1 (Sullivan, J., concurring in result).  Similarly, we do not think that the stigma associated with the status of SVP is in itself greater punishment than that imposed by the status of sex "offender."

life, the Act has the effect of increasing shame on an offender, and therefore, leans in favor of treating it as punitive when applied to Harris.

By and large, the Act only comes into play upon a finding of scienter,[18] which suggests that it is likely to be intended as punishment. Wallace, 905 N.E.2d at 381. In this case though, Harris's qualifying offense is one of the few offenses included in the Act for which there is no scienter requirement. Id. at n.11; see Ind. Code § 35-42-4-3 (Supp. 2007) (no scienter require-ment for the offense of child molesting where there is sexual intercourse or deviate sexual con-duct with a child under the age of fourteen). Thus, it seems that this factor would not be punitive as applied to him, although we have been reluctant in the past to conclude that the few non-scienter exceptions imply a nonpunitive effect as a whole. Compare Pollard, 908 N.E.2d at 1151-52 (noting that this factor would not be punitive as to Pollard if he were convicted of child molesting), with Wallace, 905 N.E.2d at 381 (noting that the few exceptions to this requirement do not imply a nonpunitive effect).

If the Act operates to promote the traditional aims of punishment, then it is more likely punitive than regulatory. Jensen, 905 N.E.2d at 393. Here, the Act deters criminal conduct and promotes community condemnation of offenders – both of which are traditional aims of punish-ment – but it promoted these aims even when Harris committed his offense and pled guilty. Id. And, these effects apply the same to an offender who is required to register for ten years as to one who is required to register for life. Id. As to this factor, Harris, like Jensen, is in no different position than before the 2007 Amendment. Id. Thus, this factor favors treating the effects of the Act as nonpunitive when applied to Harris.

Moreover, the Act applies only to criminal behavior, which suggests that its effects are punitive. Id. But, like Jensen, Harris was required to register because his behavior was criminal even before the 2007 Amendment. Id. Like Jensen, Harris is in the same position as he was when he pled guilty except for an extended period of registration. Id. This factor leans toward treating the effects of the 2007 Amendment as nonpunitive when applied to Harris.

---

[18] The term scienter is Latin for "knowingly" and is defined as "[a] degree of knowledge that makes a per-son legally responsible for the consequences of his or her act or omission." Black's Law Dictionary 1463 (9th ed. 2009).

12

As noted in both Wallace and Jensen, the Act undoubtedly advances a legitimate, regulatory purpose in that promotes public safety. To be sure, we have recognized that "registration systems are a legitimate way to protect the public from repeat offenders." Wallace, 905 N.E.2d at 383. This factor clearly favors treating the effects of the Act as nonpunitive.

Finally and most importantly, as applied to Harris, the Act's requirements are not excessive in relation to its legitimate, regulatory purpose. Like Jensen, many of the Act's registration and disclosure requirements were in place and applied to Harris at the time he committed his offense and at the time he pled guilty to child molesting, well before the 2007 Amendment.[19] Further, like the 2006 Amendment, the 2007 Amendment provides that in ten years from the date of his release from prison – the time frame in which Harris was originally required to register – he may petition the court "to consider whether [he] should no longer be considered [an SVP]." Ind. Code § 35-38-1-7.5(g) (Supp. 2007). And, under the 2007 Amendment, the court at that point may[20] determine if Harris presents a future threat – i.e., "suffers from a mental abnormality or personality disorder that makes [him] likely to repeatedly commit a sex offense," I.C. § 35-38-1-7.5(a) – after consulting with two psychologists or psychiatrists who have expertise in criminal behavioral disorders. I.C. § 35-38-1-7.5(g). As we read the 2007 Amendment, if he is not an SVP under this standard, then he no longer has to register as one and his lifetime-registration requirement terminates. But if he is, then the Act requires him to continue to register; he can petition the court again to determine his SVP status in another year. Id.

It is clear to us that this provision of the 2007 Amendment advances the Act's legitimate regulatory purpose of public safety – by its terms, only those people who present a future threat are required to register for their lifetimes. Because of this provision allowing for an individualized determination based on his likelihood to reoffend after his original ten-year registration re-

---

[19] The fact that Harris's acts could not have qualified him as an SVP at the time he committed them because the status was not yet in existence does not mean that the Act is any more punitive as applied to him; as noted in footnote 17, supra, we are mostly concerned with the imposition of a lifetime-registration requirement, not the stigma associated with the SVP status. Unlike the defendants in Hevner, 919 N.E.2d at 110, and Wallace, 905 N.E.2d at 373, Harris was subject to a registration requirement at the time he committed his offense because child molesting was a qualifying offense even under the 1997 Act. Ind. Code § 5-2-12-4(1)(C) (Supp. 1997).

[20] We note that a court may dismiss a petition filed under Indiana Code section 35-38-1-7.5(g).

13

quirement is up, the 2007 Amendment seems even less punitive as applied to Harris than as to Jensen under the 2006 Amendment. Cf. Jensen, 905 N.E.2d at 398 (Boehm, J., dissenting) ("Without some individualized determination of continued risk, the requirements of the 2006 amendments are excessive in relation to their stated purpose.").

In sum, Harris's claim fails for the same reasons Jensen's claim failed. See also Vickery v. State, 932 N.E.2d 678, 680-83 (Ind. Ct. App. 2010) (rejecting an ex post facto claim under the reasoning of Jensen). The first three factors may lean toward treating the Act as punitive, but the other four – and particularly the last factor – lean in favor of treating the Act as nonpunitive when applied to Harris.[21]

## IV

Harris, supported by a helpful amicus brief from the Indiana Office of the Public Defender, also raises another constitutional argument with respect to the 2007 Amendment, one that we have yet to consider in our previous cases dealing with the Act. Relying on the Supreme Court of Ohio's recent decision in State v. Bodyke, 126 Ohio St. 3d 266, 2010-Ohio-2424, 933 N.E.2d 753, he contends that the Act violates the constitutional principle of separation of powers. Specifically, Harris maintains that the automatic designation of offenders as SVPs "by operation of law" has the effect of permitting the DOC, an executive branch of state government, to reopen final judgments and thereby exercise a function reserved to the judiciary by the Indiana Constitution.

---

[21] Before our decision in Jensen, we wrote that the lifetime-registration requirement has "'penal implications.'" Jones, 885 N.E.2d at 1289 n.3 (quoting Thompson v. State, 875 N.E.2d 403, 409 (Ind. Ct. App. 2007), trans. denied, abrogated in part by Williams v. State, 895 N.E.2d 377, 387-88 (Ind. Ct. App. 2008)). And we note that prior to our decision in Jensen the Court of Appeals found that applying the 2006 Amendment would violate the Ex Post Facto Clause. Padgett v. State, 875 N.E.2d 310, 319 (Ind. Ct. App. 2007) (concluding that the defendant's plea agreement ultimately controlled the outcome of the case), trans. denied. But, for the reasons discussed above, the application of the lifetime-registration requirement is not punitive as applied to Harris, especially since he may only be required to register for life if, as determined by a court with the assistance of two experts, he is likely to reoffend – a requirement that most assuredly advances the Act's legitimate regulatory purpose.

14

The separation of powers or functions provision of the Indiana Constitution divides the functions of the government into three departments – the Legislative, the Executive, and the Judicial – and provides that "no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Ind. Const. art. III, § 1. In general, this provision recognizes "that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of government." State v. Monfort, 723 N.E.2d 407, 411 (Ind. 2000). Although the Legislature "has the authority to provide which acts shall be crimes in our society and to provide [for their] penalties," State v. Palmer, 270 Ind. 493, 497, 386 N.E.2d 946, 949 (1979), the Judiciary possesses the authority to "fix the penalty of and sentence a person convicted of an offense," Ind. Code § 35-50-1-1 (2008). It is well-settled under the doctrine of separation of powers that the Legislature cannot interfere with the discharge of judicial duties or set aside a final judgment of a court. Monfort, 723 N.E.2d at 411 (collecting cases); Thorpe v. King, 248 Ind. 283, 286-87, 227 N.E.2d 169, 171 (1967); Kunkel v. Moneyhon, 214 Ind. 606, 609, 17 N.E.2d 82, 83 (1938).

In State v. Bodyke, the Ohio Supreme Court declared unconstitutional certain provisions of Ohio's Adam Walsh Act that required the attorney general to reclassify sex offenders who had already been classified by court order under a former law. 933 N.E.2d at 767, ¶¶ 60-61. According to the court, these provisions violated separation of powers by (1) requiring the opening of final judgments and (2) impermissibly instructing the executive branch to review past decisions of the judicial branch. Id. Reclassification under Ohio's Act was based solely by reference to the offense and without the involvement of any court. Id. at 759-60, ¶¶ 21-22. Thus, the Act effectively stripped the trial court "of any power to engage in independent fact-finding to determine an offender's likelihood of recidivism." Id. at 760, ¶ 22.

But unlike the Ohio Supreme Court, we do not think that the "by operation of law" clause works to reopen a final judgment in the present case. As noted above, Harris's ex post facto argument is that he could not have been found to be an SVP at the time he was sentenced in 1999 because that status did not exist at the time he committed his offense; instead, his sentencing court only required that he "be enrolled on the sex offender list." Appellant's App. 132. But he

15

was an "offender" under the 1997 Act because he was convicted of an offense that qualified him as one; his sentencing court did not make that determination, the Indiana Code did. Ind. Code § 5-2-12-4 (Supp. 1997); cf. Bodyke, 933 N.E.2d at 773, ¶ 99 (Cupp, J., dissenting) (reasoning that reclassification did not change a prior judicial determination because that determination attached as a matter of law).[22] This is not the case where his sentencing court considered expert testimony and expressly refused to classify Harris as an SVP. Cf. Progressive Improvement Ass'n of Downtown Terre Haute v. Catch All Corp., 254 Ind. 121, 125-26, 258 N.E.2d 403, 405 (1970) (trial court's findings of fact after evidentiary hearing formed the basis of a final judgment that could not be altered afterwards by a board of public works). In other words, the "by operation of law" clause did not change a judicial determination that Harris was not an SVP to him being an SVP.

Nor do we think that the "by operation of law" clause removes the judiciary's discretionary function in sentencing and place it with the DOC. The statute does not grant the DOC any authority to classify or reclassify. SVP status under Indiana Code section 35-38-1-7.5(b) is determined by the statute itself. Cf. Nichols v. State, 947 N.E.2d 1011, 1016-17 (Ind. Ct. App. 2011) (noting that the duration of the reporting period is determined by the Act itself).

Unlike the statute at issue in the Ohio case, Indiana's Act preserves the judiciary's role in determining the status of offenders and their likelihood to reoffend. We note that effective March 24, 2010, an offender may petition a court to remove his or her designation or to make less restrictive his or her registration requirement by filing a petition in the circuit or superior court of the county in which he or she resides under Indiana Code section 11-8-8-22 (2010). Pub. L. No. 103-2010, § 2, 2010 Ind. Acts 1198, 1200; see Clampitt v. State, 928 N.E.2d 210, 213-14 (Ind. Ct. App. 2010) (directing offender to file petition under amended statute); Wiggins

---

[22] The Court of Appeals of Ohio has issued apparently conflicting opinions as to whether the holding of Bodyke applies in a case where there was no prior court order classifying the offenders under a sex offender category. Compare Green v. State, No. C-090650, 2010 Ohio App. LEXIS 3700, 2010 WL 3610203, 2010-Ohio-4371, ¶¶ 6-10 (per curiam) (holding Bodyke does not apply where there was no prior court order classifying the offender), discretionary appeal granted, 127 Ohio St. 3d 1531, 2011-Ohio-376, 940 N.E.2d 985, with Speight v. State, Nos. 96041, 96042, 96043, 96044, 96045, 2011 Ohio App. LEXIS 2467, 2011 WL 2436606, 2011-Ohio-2933, ¶¶ 21-22 (disagreeing with Green and applying Bodyke to cases where classification was determined by operation of law).

v. State, 928 N.E.2d 837, 840 (Ind. Ct. App. 2010) (same).[23]  Additionally, as noted above, an SVP may petition the court after ten years of registering to determine whether he is likely to reoffend.  Ind. Code § 35-38-1-7.5(g) (2008).  Thus, to the extent SVP status is the default under the Act for persons who commit certain offenses, the Act contains provisions to ensure that the status is just that – a default.  If anything, it leaves to the courts at various stages the power to determine the status of offenders and their likelihood of recidivism.  But cf. Progressive Improvement Ass'n, 254 Ind. at 126, 258 N.E.2d at 405-06 (noting that the invalidity of the statute stems from the requirement that a court's final judgment be subject to alteration by a board of public works not from the failure of the statute to provide judicial review of the board's exercise of power).

## Conclusion

Harris's status is an SVP by operation of law, and that classification does not violate the Indiana Constitution's Ex Post Facto Clause or separation of powers provision.  The judgment of the trial court is reversed.

Shepard, C.J., and Rucker and David, JJ., concur.

Dickson, J., dissents with separate opinion.

---

[23] Under Indiana Code section 11-8-8-22(j), offenders may base a petition on a claim that the application or registration requirements constitute ex post facto punishment.  Unlike the courts in Clampitt and Wiggins, cases decided only a week after the present one in May, 2010, the Court of Appeals in this case did not direct Harris to file a petition under Indiana Code section 11-8-8-22.  The DOC only mentions this section once, and neither party argues that this case should have been disposed of in a way similar to Clampitt and Wiggins.

**Dickson, Justice, dissenting**.

I respectfully dissent.  In accord with the dissent in <u>Jensen v. State</u>, 905 N.E.2d 384, 396–98 (Ind. 2009) (Boehm, J., dissenting), I believe that the defendant's reclassification and the resulting enhanced requirements under the 2007 Amendment constitute additional punishments that violate the Ex Post Facto Clause of the Indiana Constitution when applied to this defendant, who was sentenced in 1999.