# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**WILLIAM S. FRANKEL, IV**
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana



FILED
Jul 19 2012, 9:35 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BOBBY A. HARLAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1110-CR-474 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-0905-FA-1510

**July 19, 2012**

**OPINION - FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Bobby A. Harlan appeals the sentence imposed upon his two convictions of child molesting, both Class B felonies. Ind. Code § 35-42-4-3 (1981). Harlan also appeals the trial court's order that he register as a sexually violent predator (SVP). We affirm.

The relevant facts are not in dispute. Harlan and his wife frequently babysat sisters L.G. and A.C. from 1986 through 1994. Once, when Harlan was babysitting L.G. and no one else was present, Harlan watched a pornographic movie with L.G. and induced her to put her mouth on his penis. In addition, he put his penis in L.G.'s vagina on more than ten occasions. These incidents began when L.G. was four or five and ended when she was eleven or twelve. L.G. viewed Harlan as a father figure, and he told her not to tell anyone about his molestations because she could get in trouble and he could go to jail.

In 2009, A.C. told the police about Harlan's molestations of L.G. A.C. also told the officers that Harlan had induced her to engage in sexual conduct when she was a child, but the State ultimately chose not to file charges in relation to any acts Harlan committed involving A.C. A.C. agreed to talk with Harlan while wearing a "wire," which consisted of a hidden microphone and a recorder. Sentencing Tr. p. 9.[1] On May 18, 2009, A.C. went to Harlan's home while wearing the wire. The recorder malfunctioned, but the microphone worked properly, and the police listened in on A.C. and Harlan's conversation. During the conversation, Harlan admitted to molesting L.G. by having her kiss his penis on one occasion and by inserting his penis into L.G.'s vagina

---

[1] We note that the volumes of the transcript are not consecutively paginated, in violation of Indiana Appellate Rule 28(A)(2).

2

on another occasion. Later, an officer interviewed Harlan, and after the officer told Harlan that he had overheard Harlan's conversation with A.C., Harlan again admitted to having L.G. place her mouth on his penis and to placing his penis in L.G.'s vagina.

The State charged Harlan with one count of child molesting as a Class A felony. Subsequently, the State amended the information to reduce the count to a Class B felony and to add a second count of child molesting as a Class B felony. The parties executed a plea agreement, pursuant to which Harlan agreed to plead guilty to the two counts of child molesting as Class B felonies. The parties further agreed that the executed portion of Harlan's sentence would not exceed fourteen years. At the guilty plea hearing, the following discussion occurred:

STATE: Between January One (1), Nineteen-Eighty-Six (1986), through and including December Thirty-First (31st), Nineteen-Ninety-Two (1992), in Vigo County, State of Indiana, Bobby A. Harlan was a person who, with a child under twelve (12) years of age, to-wit, [L.G.], who was between the ages of four (4) and ten (10), performed or submitted to sexual intercourse or deviate sexual conduct with the said [L.G.], in violation of the Indiana Code.

COURT: And you admit that Mr. Harlan?

HARLAN: Yes.

STATE: Count Two (2), between January First (1st), Nineteen-Ninety-Two (1992), through and including December Thirty-First (31st), Nineteen-Ninety-Four (1994), in Vigo County, State of Indiana, Bobby A. Harlan was a person who, with a child under fourteen years of age, to-wit, [L.G.], who was between the ages of ten (10) and eleven (11), performed or submitted to sexual intercourse or deviate sexual conduct with the said [L.G.], in violation of the Indiana Code.

COURT: And you admit that Mr. Harlan?

3

HARLAN: Yes.

Guilty Plea Hearing Tr. pp. 13-14. The trial court sentenced Harlan to ten years on each count, to be served concurrently. The trial court further ordered Harlan to register as a SVP. This appeal followed.

Harlan raises three issues, which we restate as:

I.    Whether the trial court's order requiring Harlan to register as a SVP violates the ex post facto clause of the Indiana Constitution.

II.   Whether the trial court abused its discretion in the course of identifying aggravating and mitigating factors at sentencing.

III.  Whether Harlan's sentence is manifestly unreasonable.

## I. INDIANA'S EX POST FACTO CLAUSE

Harlan argues that the trial court should not have required him to register as a SVP because the statutes defining sex offenders and requiring them to register had not yet been enacted when he committed his crimes. He concludes that the SVP requirement, as applied to him, violates Article 1, Section 24 of the Indiana Constitution, also known as the ex post facto clause.[2]

The ex post facto clause provides, in relevant part: "No ex post facto law . . . shall ever be passed." In general, the ex post facto clause forbids laws imposing punishment for an act that was not otherwise punishable at the time it was committed or imposing additional punishment for an act then proscribed. Lemmon v. Harris, 949 N.E.2d 803, 809 (Ind. 2011). When a party presents a claim under the ex post facto clause, our

---

[2] Harlan does not present an ex post facto claim under the United States Constitution.

4

inquiry focuses on whether a legislative change alters the definition of criminal conduct or increases a penalty by which a crime is punishable, not on whether a legislative change produces some sort of disadvantage. Simmons v. State, 962 N.E.2d 86, 90 (Ind. Ct. App. 2011). The party challenging the constitutionality of a statute bears the burden of proof. Vickery v. State, 932 N.E.2d 678, 680 (Ind. Ct. App. 2010).

Our Supreme Court's decision in Lemmon is pertinent to this case. In Lemmon, Harris pleaded guilty in 1999 to child molesting as a Class B felony for acts that he committed in 1997. Prior to Harris' release on parole, the Indiana Department of Correction informed him that he was required to register as a SVP. Harris conceded that he was required to register as a sex offender for ten years pursuant to the laws in effect when he committed his crimes. However, he argued that SVP requirements did not apply to him because the SVP status was not created until 1998, and therefore those requirements, as applied to him, violated Indiana's ex post facto clause.

Our Supreme Court determined that the "intent-effects" test applied to Harris' claim. 949 N.E.2d at 810. Under that test, the Court first decided whether the General Assembly intended for SVP status and the accompanying registration requirements to constitute a punishment, or whether the legislature intended to establish a nonpunitive regulatory scheme. The Court noted that Harris had not provided any evidence of a punitive intent on the part of the General Assembly with respect to the SVP statute. In the lack of evidence to the contrary, the Court presumed that the legislature's intent was civil and regulatory rather than punitive.

Next, the Court was required to determine whether, even though the legislature did not intend to establish a punitive regime, the effects of the SVP regulatory scheme, as applied to Harris, were nonetheless punitive and constituted an ex post facto punishment. Seven factors are relevant to the determination:

1. whether the sanction involves an affirmative disability or restraint;
2. whether it has historically been regarded as punishment;
3. whether it comes into play only on a finding of scienter;
4. whether its operation will promote the traditional aims of punishment—retribution and deterrence;
5. whether the behavior to which it applies is already a crime;
6. whether an alternative purpose to which it may rationally be connected is assignable for it; and
7. whether it appears excessive in relation to the alternative purpose assigned.

Id. Applying these factors to Harris' case, our Supreme Court concluded: the SVP requirements impose affirmative obligations upon Harris; the registration requirements include a shaming component that has historically been regarded as punishment; the registration requirement for Harris' crime of child molesting as a Class B felony does not include a scienter requirement; application of the SVP registration requirements promotes retribution and deterrence, but Harris was in no worse of a position than if he were only required to register for ten years under the sex offender statutes in effect when he committed his crimes; the SVP requirement applies to criminal behavior, but in this regard Harris was in the same position as if he was required to register for ten years under the previous sex offender laws; the SVP designation and registration requirements promote a legitimate, alternative purpose; and the SVP designation and registration requirements are not excessive in relation to the legitimate regulatory purpose because:

6

(a) Harris was already subject to registration requirements in any event; and (b) the SVP statute provides a process by which Harris may ask to be no longer considered a SVP. Weighing these factors, our Supreme Court determined that designating Harris as a SVP and subjecting him to the associated registration requirements did not violate the ex post facto clause.

Here, Harlan argues that Lemmon is distinguishable from his case. Harlan notes that Harris conceded in Lemmon that he was subject to the sex offender registration requirements that were in effect when he committed his crimes, but Harris argued that he was not subject to the SVP requirements, which were enacted after he committed his crimes. By contrast, Harlan contends that he committed his offenses before the General Assembly enacted any sex offender registration requirements, so he has no obligation to register at all, much less as a SVP. We disagree. The statutes collectively referred to as the Indiana Sex Offender Registry Act first took effect on July 1, 1994. See 1994 Ind. Acts 11, § 7; see also Wallace v. State, 905 N.E.2d 371, 374-75 (Ind. 2009) (noting that sex offender registry requirements took effect in July 1994). In this case, when Harlan pleaded guilty to the second count of child molesting as a Class B felony, he admitted that he committed his crime between January 1, 1992, "through and including" December 31, 1994. Guilty Plea Hearing Tr. pp. 13-14. Thus, Harlan committed one of his child molestation offenses during the period when the sex offender registry requirements were in effect, and his attempt to distinguish Lemmon is not availing for him.

Next, we apply the analysis set forth in Lemmon to this case. We first consider whether the General Assembly intended for SVP status and the accompanying

registration requirements to constitute a punishment, or whether the legislature intended to establish a nonpunitive regulatory scheme. As was the case in <u>Lemmon</u>, Harlan has failed to provide any evidence or argument as to the General Assembly's intent, so we may presume that the legislature's intent was "civil and regulatory." <u>Lemmon</u>, 949 N.E.2d at 810.

For the second step of the analysis, we consider whether the effects of the SVP determination and registration requirements upon Harlan are "in fact so punitive as to transform the regulatory schedule into a criminal penalty" by applying the seven factors identified in <u>Lemmon</u>. <u>Id.</u> If so, then retroactive application of the law to Harlan violates the ex post facto clause.

Although in <u>Healey v. State</u>, 969 N.E.2d 607 (Ind. Ct. App. 2012), a different panel of this Court very recently adopted the rationale followed in <u>Lemmon</u> and in <u>Jensen v. State</u>, 905 N.E.2d 384 (Ind. 2009), a reasonable view might understand the merits of the contrary position. One might legitimately question whether the extended period for registration was not, in fact, an increase in the punitive impact of the registration for life requirement. <u>See</u> <u>Jensen</u>, 905 N.E.2d at 396 (Boehm, J., dissenting, with then-Justice Dickson); <u>Lemmon</u>, 949 N.E.2d at 816 (Dickson, J., dissenting). However, we are bound by the cases as decided by our Supreme Court.

The current case resembles <u>Lemmon</u> in that Harlan is, by statute, a sex offender and would be subject to registration requirements even if he were not a SVP. Consequently, application of the seven factors results indicates the same outcome as in <u>Lemmon</u>. While several of the factors lean toward treating SVP status as punitive as

applied to Harlan, our determination must be governed by the majority opinions in Lemmon and Jensen.

Harlan asserts that his designation as a SVP contravenes our Supreme Court's holding in Wallace. That case is factually distinguishable. In Wallace, our Supreme Court determined that requiring Wallace to register as a sex offender violated Indiana's ex post facto clause because he "was charged, convicted, and served the sentence for his crime before the statutes collectively referred to as the Indiana Sex Offender Registration Act were enacted." 905 N.E.2d at 384. In this case, Harlan committed one of his crimes after the sex offender registration requirements took effect. Therefore, Wallace does not compel reversal of the trial court's judgment. For these reasons, Harlan's claim under the Indiana ex post facto clause is to be rejected.

## II. SENTENCING DISCRETION

Our standard for reviewing a sentence is well established. Sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. Sims v. State, 585 N.E.2d 271, 272 (Ind. 1992). It is within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. Id.

Here, Harlan claims that the trial court erred by citing his molestation of A.C. as an aggravating circumstance because it is uncharged conduct and the statute of limitations has expired on any criminal charges that could have been filed for that conduct. Allegations of prior criminal activity need not be reduced to conviction before

9

they may be properly considered as aggravating circumstances by a sentencing court. Beason v. State, 690 N.E.2d 277, 281 (Ind. 1998).

In this case, the trial court identified as a statutory aggravator that Harlan "occupied a position of trust and had the care, custody, and control of the victim in this case at the time the offense occurred." Sentencing Tr. p. 110. The trial court did not find any other statutory aggravating factors, such as criminal history. Instead, the trial court discussed "other aggravating circumstances that the Court may consider [to] exist." Id. at 111. These factors included "that not only did Mr. Harlan molest L.G., that he also . . . engaged in inappropriate conduct with and molested . . . the victim's sister in this case." Id. at 111-12. The trial court's identification of Harlan's acts against A.C. as an aggravating circumstance follows precedent, as the trial court did not identify those acts as part of a criminal history, but rather as a nonstatutory aggravating factor. See Singer v. State, 674 N.E.2d 11, 14-15 (Ind. Ct. App. 1996) (concluding that the trial court did not abuse its discretion during sentencing by citing as an aggravating factor Singer's uncharged acts of violence against his children).

With respect to the statute of limitations, Harlan states that "to consider as an aggravating factor evidence of a crime whose statute of limitation has expired is tantamount to allowing prosecution of the crime." Appellant's Br. p. 13. He cites no authority to support this claim. The primary purpose of statutes of limitation is to protect defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence. Sloan v. State, 947 N.E.2d 917, 920 (Ind. 2011). Here, Harlan was not subjected to a delayed prosecution for molesting A.C. Instead, the trial

10

court merely noted his acts against A.C. in the course of sentencing Harlan for his crimes involving L.G. We conclude that the trial court did not abuse its discretion by citing his conduct with A.C. as an aggravating factor.

Next, Harlan argues that the trial court overlooked several mitigating factors. A trial court must consider the mitigating factors presented by a defendant, but a finding of mitigating circumstances is discretionary, not mandatory. Cook v. State, 612 N.E.2d 1085, 1090 (Ind. Ct. App. 1993). An abuse of discretion occurs in this context when the trial court issues a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration. Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (2007).

Harlan asserts that the trial court failed to properly consider his lack of a criminal history and his remorse. To the contrary, the trial court identified Harlan's lack of a criminal history as a mitigating factor, but "in light of the other uncharged criminal conduct, I'm not certain that it's much of . . . a mitigating factor." Sentencing Tr. p. 113. In addition, the trial court determined that Harlan's remorse was a mitigating factor, but "I don't find it particularly compelling to grant significant weight to [it]." Id. at 114. A sentencing court is not obligated to weigh or credit facts proffered as mitigating by the defendant in the way that the defendant suggests they should be weighed or credited. Heyen v. State, 936 N.E.2d 294, 304-05 (Ind. Ct. App. 2010), trans. denied. We find no abuse of discretion here.

Harlan also claims that the trial court should have found as mitigating circumstances that his crimes were the result of circumstances unlikely to recur and that

11

his character and attitude are such that he is unlikely to commit another crime. We cannot conclude that these mitigating circumstances are supported by the record. Harlan molested L.G. repeatedly over a span of years despite having ample opportunity to end his abusive behavior. Furthermore, L.G. spoke with Harlan over the phone once several years after the molestations had ended, and she perceived that he was asking her to continue to conceal his crimes. Finally, Harlan initially denied molesting L.G. when he was approached by A.C. and the police. Harlan's attempts to avoid responsibility for his crimes indicate that he has not necessarily changed his behavior and would not necessarily refrain from committing similar crimes if presented with another opportunity.

Finally, Harlan argues that the trial court should have determined that his cooperation with law enforcement was a mitigating factor. We cannot conclude that this factor is supported by the record. When a police officer spoke with Harlan about A.C.'s allegations, Harlan denied any wrongdoing until the officer told Harlan that he had listened in on Harlan's conversation with A.C. At that point, Harlan may have concluded that he was caught and chose to cooperate with the police out of pragmatism.

We conclude that the trial court did not abuse its discretion in the course of identifying and weighing aggravating and mitigating factors.

### III. REASONABLENESS OF SENTENCE

A sentence authorized by statute will not be revised except where the sentence is manifestly unreasonable. Sims, 585 N.E.2d at 272. A sentence is not manifestly

12

unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.[3] Id.

To assess the the sentence, we look first to the statutory range established for the class of the offenses. Here, during the period in which Harlan committed his crimes, the fixed sentence for a Class B felony was ten years, with not more than ten years added for aggravating factors or not more than four years subtracted for mitigating factors. Ind. Code § 35-50-2-5 (1977).[4] Harlan received the presumptive sentence of ten years for each conviction, to be served concurrently.

Next, we look to the nature of the offenses and the character of the offender. Regarding the nature of the offenses, Harlan repeatedly molested L.G. over a period of years while she was in his care. L.G. considered Harlan to be a father figure. In addition, Harlan groomed L.G. for sexual conduct by showing her pornographic movies and magazines. Harlan notes that none of the incidents involved violence, but Harlan told L.G. several times not to tell others what he had done or she could get in trouble and he could go to jail.

Regarding the character of the offender, Harlan notes that he has no criminal history. However, his lack of criminal convictions is offset by his repeated molestations

---

[3] If Harlan had committed his crimes more recently, his challenge to the propriety of his sentence would be governed by Indiana Appellate Rule 7(B), which requires the reviewing court to determine if a sentence is inappropriate in light of the nature of the offense and the character of the offender. However, Harlan's sentence must be judged by the standards that were in effect when he committed his crimes. See Collins v. State, 911 N.E.2d 700, 708 (Ind. Ct. App. 2009) ("The law [that] is in effect at the time that the crime was committed is controlling."), trans. denied.

[4] At sentencing, the trial court stated that the parties "stipulated" that "the presumptive sentence was ten years and the range is six to fourteen." Sentencing Tr. pp. 109-10. However, the State had agreed only that "the Court is allowed to take off up to six [years] for mitigating factors." Id. at 94.

of L.G. over a lengthy period of time. Harlan also asserts that he was "forthright" with the police. Appellant's Br. p. 22. We note that Harlan only admitted his crimes to the police once the officer told Harlan that the police had heard Harlan's conversation with A.C. Furthermore, when A.C. initially confronted Harlan about his molestation of her and L.G., he tried to place the blame upon her, alleging that she "came onto" him. Sentencing Tr. p. 38. Harlan has failed to convince us that his presumptive concurrent sentence is manifestly unreasonable.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and MATHIAS, J., concur.