# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2020, 11:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Office of the Public Defender Appellate Division
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lavardis L. Casey,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 29, 2020<br><br>Court of Appeals Case No.<br>20A-CR-35<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Diane R. Boswell, Judge<br><br>Trial Court Cause No.<br>45G03-1509-F1-7 |

**Bradford, Chief Judge.**

# Case Summary

[1] On the morning of September 8, 2015, Lavardis Casey was involved in a road-rage incident wherein he struck an individual riding a motor bike, causing the individual to be thrown from his bike and suffer significant permanent injuries. Casey was subsequently charged under Cause Number 45G03-1509-F1-7 ("Cause No. F1-7") with a number of crimes in connection to the incident, including Level 5 felony battery with serious bodily injury. He was also alleged to be a habitual offender. Casey pled guilty to the Level 5 felony battery charge and admitted that he was a habitual offender. In exchange, the State dismissed a number of other charges, including the remaining charges filed in Cause No. F1-7 and charges filed under Cause Number 45G03-1510-F6-187 ("Cause No. F6-187"). The trial court accepted Casey's guilty plea and sentenced him to a term of five years for his Level 5 felony conviction, enhanced by five years by virtue of his status as a habitual offender, for an aggregate ten-year sentence. On appeal, Casey contends that the trial court abused its discretion in sentencing him and that is sentence is inappropriate. We affirm.

# Facts and Procedural History

[2] At approximately 6:05 a.m. on September 8, 2015, Casey was driving a 2001 black Chevrolet Cavalier with Rachel Botts as his passenger. As Casey and Botts traveled south on Cleveland Street near 41st Avenue in Gary, they came into contact with Shawn Johnson, whom both knew. Johnson, who was riding on a motor bike, passed Casey's vehicle and kicked Casey's mirror. Casey

reacted by "chasing [Johnson] in an attempt to run him down and injure him." Appellant's App. Vol. II p. 121.

[3]     Casey chased Johnson down Cleveland Street to West 47th Avenue and down several side streets. Botts later reported that during the chase, Casey and Johnson "were driving at speeds of at least 70 miles per hour and disregarding traffic control devices and signs." Appellant's App. Vol. II p. 121. At some point, Casey struck the rear of Johnson's motor bike, almost causing Johnson to lose control of the bike. Johnson then "disappeared" and Botts pleaded with Casey "to let him go and to let the situation be." Appellant's App. Vol. II p. 121.

[4]     Casey, however, did not comply with Botts's request to "let the situation be." Appellant's App. Vol. II p. 121. Instead, he went to a home located on West 45th Avenue where he knew Johnson's friend "Rico" lived, believing that Johnson "would show up there." Appellant's App. Vol. II p. 121. After waiting for Johnson at the home for approximately five minutes, Casey "proceeded to take Botts home." Appellant's App. Vol. II p. 121. Johnson subsequently reappeared and again drove around Casey's vehicle "and got in front of him." Appellant's App. Vol. II p. 121.

[5]     Casey re-engaged the chase, with both Casey and Johnson again traveling at a high rate of speed. Casey eventually caught up to Johnson and, for a second time, struck the back of Johnson's motor bike. This time, Johnson lost control of the bike and "struck a concrete driveway embankment which launched [him]

in the air" before landing on the ground. Appellant's App. Vol. II p. 121. Casey did not stop to render aid to Johnson or call 911.

[6] A witness to the incident notified police and when investigating officers arrived at the scene, Johnson indicated that he had been "rammed off the road by a black vehicle by a guy named Dingo." Appellant's App. Vol. II p. 122. Johnson was then transported to the hospital and was later airlifted to Christ Advocate Hospital in Oaklawn, Illinois. As a result of the incident, Johnson suffered a severe spinal injury and is permanently a paraplegic. Casey "is known by the nickname 'Dingo.'" Appellant's App. Vol. II p. 122.

[7] On September 14, 2015, the State charged Casey under Cause No. F1-7 with ten counts, including, *inter alia*, Level 5 felony battery resulting in serious bodily injury. On or about March 13, 2017, the State amended the charging information, alleging Case to be a habitual offender. On October 15, 2019, Casey and the State entered into a plea agreement under the terms of which Casey agreed to plead guilty to Level 5 felony battery resulting in serious bodily injury and admit to being a habitual offender. In exchange for Casey's guilty plea, the State agreed to dismiss the remaining charges filed under Cause No. F1-7 and two counts of Level 6 felony intimidation that were filed under Cause No. F6-187.[1] Sentencing was left to the discretion of the trial court. On

---

[1] The intimidation charges related to the charges brought under Cause No. F1-7 as the "intimidation allegedly occurred in an effort to prevent a witness from reporting what the witness heard or observed to the police." Appellant's App. Vol. II p. 45.

December 5, 2019, the trial court accepted Casey's guilty plea, entered a judgment of conviction for Level 5 felony battery resulting in serious bodily injury, found Casey to be a habitual offender, and sentenced Casey to an aggregate ten-year term of incarceration.

# Discussion and Decision

[8] Casey challenges his ten-year sentence on appeal, arguing both that the trial court abused its discretion in sentencing him and that his sentence is inappropriate.

# I. Abuse of Discretion

[9] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> We review for an abuse of discretion the court's finding of aggravators and mitigators to justify a sentence, but we cannot review the relative weight assigned to those factors. When reviewing the aggravating and mitigating circumstances identified by the trial court in its sentencing statement, we will remand only if the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by

the record, and advanced for consideration, or the reasons given
are improper as a matter of law.

*Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016) (internal citations
and quotations omitted). A single aggravating circumstance may be sufficient
to enhance a sentence. *Id.* at 417.

In sentencing Casey, the trial court found the following aggravating factors: (1)
Casey's prior criminal history; and (2) the nature and circumstances of the
crime, including that the incident was the result of an episode of road rage
during which Casey had lain in wait for Johnson and demonstrated a depraved
indifference to Johnson's life. The trial court also found the fact that Casey has
the capacity to be a law-abiding citizen to be a mitigating factor. In challenging
his sentence, Casey claims that the trial court abused its discretion by failing to
find the following to be mitigating factors: (1) his value to the community, (2)
the fact that Johnson induced the incident, (3) his remorse, and (4) the fact that
he accepted responsibility for his actions by pleading guilty.

## A. Mitigating Factors

Although a sentencing court must consider all evidence of mitigating factors
offered by a defendant, the finding of mitigating factors rests within the court's
discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). A trial court is
neither required to find the presence of mitigating factors, *Fugate v. State*, 608
N.E.2d 1370, 1374 (Ind. 1993), nor obligated to explain why it did not find a
factor to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind.

2001). "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Henderson*, 769 N.E.2d at 179 (internal quotations omitted).

[12] While Indiana law "mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them," *Sherwood*, 749 N.E.2d at 38, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999). Furthermore, "the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed." *Fugate*, 608 N.E.2d at 1374.

### 1. Value to Community

[13] Casey asserts that the trial court abused its discretion in failing to find his value to his community to be a mitigating factor. In support of this assertion, Casey points to the testimony of his neighbor Albert Opalko, who testified that Casey was an asset to the neighborhood. Specifically, Opalko testified that Casey had cleaned an alley in the neighborhood and does "all the shoveling" for neighbors. Sent. Tr. p. 18. Casey also pointed to letters written to the court by his friends and neighbors explaining that Casey is an asset to the neighborhood because in addition to keeping his own property clean, Casey helps the neighborhood by cleaning up debris around abandoned houses and assisting neighbors in need.

[14] Despite Casey's claim to the contrary, the record reveals that the trial court considered this proffered mitigating factor. In its oral sentencing statement, the trial court stated the following:

> You have since this incident tried to lead a law[-]abiding life. Your witness today spoke to that effect. Your neighbors think you are an excellent … think that you are an excellent neighbor, and you probably are. I don't doubt them at all. You probably are an asset to your community, but there are consequences to be had for your actions, and we can't overlook those.

Sent. Tr. p. 32. The trial court's statement clearly demonstrates that the trial court considered the fact that neighbors considered Casey to be an asset to the community but did not assign this fact any significant mitigating weight. The trial court was not required to weigh or credit the proffered mitigating evidence the way Casey suggests it should be credited or weighed. *See Fugate*, 608 N.E.2d at 1374. The trial court did not abuse its discretion in failing to find Casey's claimed value to his community to be a significant mitigating factor.

### 2. *Incident Induced by Victim*

[15] Casey also asserts that the trial court abused its discretion in failing to find the fact that Johnson had induced the incident to be a mitigating factor. Indiana Code section 35-38-1-7.1(b)(3) provides that the trial court may consider the fact that the "victim of the crime induced or facilitated the offense" to be a mitigating factor. As was the case with the preceding factor, the record reveals that the trial court considered the proffered factor but did not assign it the weight or significance claimed by Casey.

In discounting Casey's reliance on the fact that Johnson had induced the altercation, the trial court emphasized that Casey had had the opportunity to disengage from the altercation and calm down prior to injuring Johnson. Specifically, the trial court stated "what I'm getting at is that he had a cooling-off period. He had -- he laid in wait for this young man to come back." Sent. Tr. p. 24. The trial court further stated that "[w]hen you lost sight of him, you sat and you waited for him to show up again at his house, or at some location you waited … you waited for him, and then you left and you saw him again and you continued this altercation." Sent. Tr. pp. 31–32. Thus, the trial court acknowledged that while Johnson may have induced the original altercation, Casey had decided to re-engage and further the altercation after a cooling-off period. Again, the trial court was not required to give this proffered factor the same significance or weight as argued by Casey. *See Fugate*, 608 N.E.2d at 1374. The trial court did not abuse its discretion in failing to find the fact that Johnson had induced the original altercation to be a significant mitigating factor.

### 3. Remorse

Casey asserts that the trial court abused its discretion in failing to find his remorse to be a mitigating factor. "Remorse may properly be considered as a mitigating factor." *Singer v. State*, 674 N.E.2d 11, 17 (Ind. Ct. App. 1996). "However, the Indiana Supreme Court has held that a trial court's determination of a defendant's remorse is similar to a determination of credibility." *Stout v. State*, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005) (citing

*Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002)). "As such, without evidence of some impermissible consideration by the trial court, a reviewing court will accept its determination as to remorse." *Id.* "[T]he trial court is in the best position to judge the sincerity of a defendant's remorseful statements." *Id.*

[18]     In this case, Casey expressed remorse for his actions, stating as follows:

> Yes, Your Honor. I would like to address the Court in saying that I'm truly sorry for the accident that I played a part in which happened to Shawn Johnson. I do take full responsibility. I am completely -- I completely know that because of my actions of not just stopping my vehicle and calling the police, that I sudden [sic] went from being the victim to the defendant. Because of my actions, I am here before you now. I know this case has been going on for some time now. I would like to -- the Court to take it in my consideration that I have been a law[-]abiding citizen and one who is providing for my children. Your Honor, I know that I can and will continue to be. The last thing I want to say is to Shawn Johnson and his family that I truly -- that I'm truly sorry. When I left my home that morning, my intentions were not to cause any harm to anyone. I do respectfully -- I do respect human life.

Sent. Tr. p. 30. The trial court acknowledged Casey's claimed remorse but did not assign it same weight and significance as Casey. The trial court noted that while Casey indicated that he was sorry for the "accident," the facts did not support Casey's claim that Johnson's injuries were caused by an accident. Specifically, the trial court stated as following:

> I want to say to you, Mr. Casey, you -- when you spoke on your own behalf, you said you were sorry for the accident. The Court wants to remind you that this was no accident, okay? This was

an intentional act.  Now, you didn't intend the consequences, okay?  I'm not saying that you wanted [Johnson] to be injured in the way that he was injured, but this was an intentional act.  You were angry with him, and rightfully so, okay?  He had damaged your car.  You were angry about that, but your response to that was far too great.  You said it yourself, you could have called the police.  You knew who he was.  You could have identified him and said he broke the thing on your car, the rear-view mirror on your car, not rear-view -- the outside mirror on your car.  You could have done that, but instead you pursued him in a chase.…  This was no accident.  This was no accident, okay?  Intentional and depraved.  You gave no thought to what would happen if you hit him with that car.  I'm assuming you didn't because I think if you had thought about, oh, I could hit him, push him over in the ditch, break his spine and he'd be incapacitated, he'd be dead or handicapped for the rest of his life, you would have said I don't want to do that.  I'm assuming you would have said that.

Sent. Tr. pp. 31–32.  Further, although Casey expressed remorse, he also continued to lay blame for the incident on Johnson.  The trial court, being in the best position to judge Casey's credibility as to his stated remorse, *Stout*, 834 N.E.2d at 711, was not required to assign the same weight and significance to Casey's claimed remorse as Casey.  *See Fugate*, 608 N.E.2d at 1374.  The trial court did not abuse its discretion in failing to find Casey's claimed remorse to be a significant mitigating factor.

### *4.  Guilty Plea*

[19]   Casey also asserts that the trial court abused its discretion in failing to find his guilty plea to be a significant mitigating factor.  "[T]he significance of a guilty plea as a mitigating factor varies from case to case."  *Anglemyer*, 875 N.E.2d at

221. For example, "[a] guilty plea saves significant court resources, and where the State reaps such substantial benefits from the defendant's act of pleading guilty, the defendant deserves to have a substantial benefit returned." *Patterson v. State*, 846 N.E.2d 723, 729 (Ind. Ct. App. 2006). "However, a trial court does not abuse its discretion by not finding a guilty plea as a mitigating factor when a defendant receives substantial benefits for pleading guilty." *Id.*

[20] Here, in exchange for Casey's plea of guilty to Level 5 felony battery with serious bodily injury and admission that he is a habitual offender, the State agreed to drop eight other felony charges, including a charge of Level 1 felony attempted murder, and three other misdemeanor charges. Therefore, Casey received a substantial benefit from his decision to plead guilty. In this case the decision to plead guilty clearly is a pragmatic decision, rather than an acceptance of guilt, given that the State was prepared to present both witness testimony and video evidence proving that Casey was the individual responsible for Johnson's injuries. *See Primmer v. State*, 857 N.E.2d 11, 16 (Ind. Ct. App. 2006) (providing that a guilty plea may also be considered less significant if there was substantial admissible evidence of the defendant's guilt). Given the pragmatic nature of Casey's plea coupled with the substantial benefit received by Casey in exchange for his guilty plea, we cannot say that the trial court abused its discretion in failing to find Casey's guilty plea to be a significant mitigating factor.

# II. Appropriateness of Sentence

[21] Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotation omitted). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[22] The trial court sentenced Casey to a term of five years for his Level 5 felony conviction, enhanced by five years as a result of his status as a habitual offender, for an aggregate ten-year sentence. A person who commits a Level 5 felony "shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b). "The court shall sentence a person found to be a habitual offender to an additional fixed term that is between … two (2) years and six (6) years, for a person convicted of" a Level 5 felony. Ind. Code § 35-50-2-8(i). Pursuant to these statutes, the trial court could have sentenced Casey to an aggregate term of between three and twelve years. Thus, in sentencing Casey to an aggregate ten-year sentence, the trial court did not impose a maximum sentence.

[23]     In arguing that his ten-year sentence is inappropriate in light of the nature of his

offense, Casey

> concedes that the nature of the offense was serious in that
> [Johnson] suffered injuries which rendered him a paraplegic. As
> argued previously, however, Johnson initiated the confrontation
> between the two men. Casey testified that he did not intend to
> harm anyone when the day began. These factors mitigate the
> nature of the offense despite the injuries Johnson suffered.

Appellant's Br. p. 12 (internal record citation omitted). The State counters

Casey's mitigation of the seriousness of his actions by arguing as follows:

> In response to Johnson damaging his side mirror, the then 38-
> year-old Casey engaged in a hunt to run Johnson down and hurt
> him. Casey struck Johnson's rear tire once, but [he was] not
> satisfied with that because Johnson managed to regain control, so
> Casey drove to a friend of Johnson's house in an attempt to
> ambush Johnson. When Casey found Johnson, Casey rammed
> Johnson again, this time causing Johnson to lose control and
> crash. As a result, of the crash Johnson is now a paraplegic.
> Johnson is no longer able to live independently and relies on his
> sister for care. Casey's relentless pursuit of Johnson and the
> degree of Johnson's permanent, severe injury are far beyond the
> acts necessary to establish this crime.

Appellee's Br. pp. 12–13. We conclude that the State's argument accurately

depicts the serious nature of Casey's crime. Furthermore, while it may be true

that Johnson initiated the altercation by kicking Casey's mirror, Casey had the

opportunity to disengage from the altercation but instead chose to search and

lay in wait for Johnson before re-engaging in the altercation. Casey's actions

were very serious in nature and demonstrated a complete lack of respect and concern for Johnson's life.

[24] With respect to his character, Casey argues that the testimony of and letters from neighbors demonstrated that he is "a caring individual who support[s] his friends and neighbors and [is] an asset to his community." Appellant's Br. p. 12. We acknowledge that Casey may have the potential to be a caring, helpful, and law-abiding neighbor. However, his actions also demonstrated that he is quick to succumb to extreme anger and has a propensity for violence. Casey also acknowledges that he has a significant criminal history but argues that his last conviction occurred six years prior to the commission of the instant offense and that he successfully followed the rules of his pre-trial electronic monitoring. While Casey may have successfully refrained from criminal activity for a relatively short period of time and followed the rules of his pretrial electronic monitoring, his criminal history nevertheless reflects poorly on his character.

[25] "When considering the character of the offender, one relevant fact is the defendant's criminal history." *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). "The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Id.* Further, allegations of prior criminal activity need not be reduced to conviction before they may be properly considered by a sentencing court. *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012).

In a twenty-three-year period, between 1994 and 2017, Casey was arrested twenty-six times. Since 1996, eight of Casey's arrests "have been for things that were violence related, and then about seven of his arrests have been for drug dealing." Sent. Tr. p. 13. From those arrests, Casey has been convicted a total of fifteen times, amassing eight felony and seven misdemeanor convictions. Casey's convictions for violent offenses include prior acts of battery and domestic battery. He also had amassed a number of convictions for resisting law enforcement and for reckless and disorderly conduct. Further, on at least one occasion, Casey's probation had been unsuccessfully terminated.

Casey was thirty-eight years old at the time of the incident. While he might have shown the ability to refrain from engaging in criminal history for a short period of time prior to committing the instant criminal behavior, Casey's criminal history demonstrates that for the vast majority of his adult life, he has failed to follow the laws of both this state and the State of Illinois. Further, even though presented with the opportunity to stop and disengage, Casey chose to re-engage in dangerous and reckless actions that ultimately resulted in serious injury to Johnson. Given the serious nature of his offense and evidence of poor character, Casey has failed to convince us that his aggregate ten-year sentence is inappropriate. *See Sanchez*, 891 N.E.2d at 176 ("The defendant bears the burden of persuading us that his sentence is inappropriate.").

The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.